UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES M. CAMERON | ) | |

**ORDER ON MOTION TO SUPPRESS**

James M. Cameron seeks an order suppressing the results of a search of computers the Government seized pursuant to a search warrant. He claims that the state of Maine Superior Court Justice was not authorized under Maine law to issue a search warrant, that the actual search exceeded the terms of the warrant, that the search was conducted after the expiration of the warrant, and that the information in the affidavits failed to support a finding of probable cause. The Court denies the motion.

**I.     STATEMENT OF FACTS**

On February 11, 2009, a federal grand jury indicted James M. Cameron, alleging a variety of violations of federal criminal prohibitions against the possession and transportation of child pornography. *Indictment* (Docket # 3). On May 18, 2009, Mr. Cameron moved to suppress evidence the Government obtained as a consequence of a December 21, 2007 search of his house. *Mot. to Suppress Evid.* (Docket # 27) (*Mot.*). The bases of the motion include: (1) that John Nivison, as a Superior Court Justice for the state of Maine, is not authorized to issue a search warrant; (2) that a state of Maine Superior Court Justice is not a "neutral and detached magistrate"; (3) that recent changes in Maine law do not authorize Justice Nivison to issue a search warrant; (4) that the exercise of issuance power by a Superior Court Justice violates the

rules of the Maine Supreme Judicial Court; (5) that a search warrant signed by an unauthorized judge is void *ab initio* and cannot be saved by the "good faith exception"; (6) that the search of data files on the computers exceeded the scope of the warrant and was overbroad; (7) that the search of the computer equipment was conducted after the expiration of the warrant; and, (8) that the information contained in the four corners of the affidavits was insufficient to support a finding of probable cause.

## II.     DISCUSSION

### A.     Unauthorized Issuance of Search Warrant, "Neutral and Detached Magistrate," Ineffective Authorization of Search Warrant Authority, and the Good Faith Exception

On December 21, 2007, affidavits in support of a search warrant and a draft search warrant for Mr. Cameron's residence were taken to state of Maine Superior Court Justice John Nivison for review. The same day, Justice Nivison signed the warrant, crossing out the title "Justice of the Peace," leaving the title District Court Judge intact, and writing below "District Court Judge," his title "Superior Court Justice."[1]

The basic premise of Mr. Cameron's multi-pronged attack against the legality of the search warrant is that Justices of the Superior Court in Maine are not authorized under Maine law to issue search warrants. Mr. Cameron points to the language of the search warrant authorizing statute, which limits the authority to issue search warrants to District Judges and Justices of the Peace.

> A judge of the District Court or a justice of the peace shall issue search warrants for any place in the State for such purposes as the Constitution of the United States and the Constitution of Maine permit. . .

---

[1] Mr. Cameron claims that Justice Nivison struck out "District Court Judge" and wrote in "Superior Court Justice". *Mot.* at 3. This is incorrect. The search warrant confirms that Justice Nivison struck out "Justice of the Peace" and added "Superior Court Justice" under "District Court Judge." *Search Warrant* Attach. 1 (Docket # 63).

15 M.R.S.A. § 55. He also notes that Rule 41 of the Maine Rules of Criminal Procedure, which addresses search warrants, refers only to District Court Judges. *Mot.* at 3; Me. R. Crim. P. 41(a) (stating that "[a] search warrant may be issued by a judge of the District Court or justice of the peace as authorized by law"). Mr. Cameron argues that the statutory restriction to District Judges is policy-based, since Superior Court Justices are more likely to hear motions to suppress and since the inclusion of Superior Court Justices would diminish District Judge involvement in the search warrant review process. *Mot.* at 4. He contends that the failure of the state of Maine to expressly designate Superior Court Justices to issue search warrants deprived him of his constitutional right to a "neutral and detached magistrate." *Id.* (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). Finally, acknowledging that the Chief Justice of the Maine Supreme Judicial Court issued an administrative order allowing Justices of the Superior Court to sit as Judges of the District Court, Mr. Cameron says that the authorization did not extend to the issuance of search warrants. *Mot.* at 5-7.

The Court does not agree that a Superior Court Justice in Maine lacks the authority to issue a search warrant. In 2007, the Chief Justice of the Maine Supreme Judicial Court, acting pursuant to statutory authority, expressly authorized the Justices of the Superior Court to sit as Judges of the District Court. *Maine Supreme Judicial Court*, Admin. Order JB-07-3 (eff. Nov. 1, 2007).[2] The administrative order relies on authority granted by 4 M.R.S.A. § 121, which authorizes the Chief Justice of the Maine Supreme Judicial Court to assign a Justice of the Superior Court to sit in the District Court and "when so directed the justice has authority and

---

[2] The Administrative Order reads:
> In accordance with 4 M.R.S. §§ 2-A, 121, 157-C, any judge who has been appointed, confirmed, and sworn in to the role of judge of the District Court, justice of the Superior Court, or justice of the Supreme Court, including any active retired judge or justice, is authorized to sit as a judge or justice of either the District or Superior Court at any time without further order of the Court.

3

jurisdiction in the District Court as if the justice were a regular judge of that court" and to "hear all matters and issue all orders, notices, decrees and judgments that any Judge of the District Court is authorized to hear and issue." 4 M.R.S.A. § 121.

In view of Administrative Order JB-07-3, the Court agrees with the Government that when Justice Nivison signed the search warrant as a Superior Court Justice, he was acting as a District Judge under 15 M.R.S.A. § 55. He was expressly authorized to do so by the Chief Justice of the Maine Supreme Court, and the Chief Justice herself was acting under express statutory authority. Mr. Cameron's literal interpretation notwithstanding, when a Superior Court Justice issues a search warrant in Maine, he or she is acting as a District Court Judge under 15 M.R.S.A. § 55 and Maine Rule of Criminal Procedure 41, and is thus authorized to issue a search warrant. Since Justice Nivison was acting according to authority under Maine law, he was a "neutral and detached magistrate" under *Johnson*.[3] *Johnson*, 333 U.S. at 14; *Shadwick v. Tampa*, 407 U.S. 345, 350 (1972).

Mr. Cameron's final contention is that search warrants are not "orders, notices, decrees and judgments" under 4 M.R.S.A. § 121, and therefore, even though a Superior Court Justice might be authorized to issue some District Court orders, he or she would not be authorized to issue a search warrant. This argument ignores the first sentence of the authorizing section, which provides that "the justice has the authority and jurisdiction of the District Court as if the justice were a regular judge of that court." 4 M.R.S.A. § 121. Further, in issuing a search warrant, a judge would seem to be issuing an order, notice, or decree within the meaning of 4 M.R.S.A. section 121, and if not, the authority to issue a search warrant is authorized under the general grant of authority in the first sentence of § 121.

---

[3] There has been no suggestion that Justice Nivison was not in fact neutral and detached when he reviewed and authorized the warrant. *See United States v. Andrews*, No. 03-06-B-S, 2003 U.S. Dist. LEXIS 9938, *12-13 (D. Me. June 11, 2003).

4

### B. The Search of Data Files on the Computers Exceeded the Scope of the Warrant and the Warrant Itself Was Overbroad

Distinguishing between the authority to seize and the authority to search, Mr. Cameron says that the law enforcement search of the seized Cameron data files exceeded the authorized scope of the warrant. *Mot.* at 11-17. He says the warrant contained two parts, "Property/Evidence to be Seized," and a seizure section, which expressly referenced the computers, computer records or data, and visual images in any form that would be illegal under 17-A M.R.S.A. § 281(4).[4] *Id.* at 12. He says that the search warrant "did not authorize the search of the computers for any particular items" and that the warrant "did not authorize the search of the computers themselves, just the seizure of them and any other 'computer records or data.'" *Id.* He contends that the failure of the search portion of the warrant to specify what the officers were authorized to look for within the computers makes the warrant a "general warrant" prohibited by the Fourth Amendment as overly broad. *Id.* at 13. Noting that computers contain vast amounts of private information, he maintains that to be upheld, a search warrant must specify what the officers are authorized to seek when they examine a computer. *Id.* In support, he cites *United States v. Grimmett*, a Tenth Circuit case, for the proposition that "courts are willing to allow very broad computer searches, but officers must ask the court for such permission." *Mot.* at 13 (citing 439 F.3d 1263, 1270 (10th Cir. 2006)).

The first part of Mr. Cameron's objection is not well taken. The search warrant states in part:

> It is further authorized that in the event that computers or electronic data storage devices are in fact seized, they may be examined by a trained forensic examiner

---

[4] This section of the Maine Criminal Code contains a definition of sexually explicit conduct. In addition, the affidavit adds a summarizing allegation in handwriting that says "[a]ll of which constitute evidence of the crimes of possession or dissemination of sexually explicit material. 17-A M.R.S.A. 283 (sic)". Search *Warrant* at 2. Section 283 of title 17-A makes it a state crime to disseminate certain types of sexually explicit material depicting minors. 17-A M.R.S.A. § 283(1)(A).

> from the Maine State Police Computer Crimes Unit (or another law enforcement agency qualified to perform computer forensic examinations) either at the place of seizure or upon removal of the equipment to the Maine State Police Computer Crimes Unit's forensic lab, or both. This warrant further authorizes the making of a duplicate "image" of any computer or electronic data storage device that is seized pursuant to this warrant for subsequent forensic examination. It is further authorized that civilian employees of the Maine Department of Public Safety assigned to the Maine State Police Computer Crimes Unit may assist in the execution of this search warrant and any subsequent forensic examination of seized evidence.

*Search Warrant* Attach. 1 (Docket # 63). By its express terms, the warrant authorizes not merely the seizure, but also the search of the seized computers. The search complied, as it must, with the terms of the warrant. *United States v. Rogers*, 521 F.3d 5, 9 (1st Cir. 2008); *Miller v. Kennebec County*, 219 F.3d 8, 11 (1st Cir. 2000).

The second argument questions the sufficiency of the specificity in the warrant. *Grimmett*, the primary case Mr. Cameron relies upon, rejected the argument he is making here.[5] *Grimmett* recognized that "officers must be clear as to what they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *Grimmett*, 439 F.3d at 1270 (quoting *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001)). At the same time, a computer search "may be as extensive as reasonably required to locate the items described in the warrant." *Grimmett*, 439 F.3d at 1270 (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982)). *Grimmett* noted that in that case, "[n]o wholesale searching occurred [], despite the broad authority the warrant may have granted." *Id.* In his memorandum, Mr. Cameron makes some unsupported assertions that the officers in this case went beyond the authority granted in the warrant. However, his allegations remain allegations until supported by evidence, and Mr. Cameron has not produced evidence that in

---

[5] Mr. Cameron also cites *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995). In *Kow*, however, the Ninth Circuit observed that the search warrant failed "to describe in the warrant [the] specific criminal activity suspected." *Id.* at 427. This is a key distinction, since the nature of the alleged crime limits the scope of the search.

performing the search for child pornography on the Cameron computers, the officers engaged in an "exploratory rummaging through files." *Id.*

More to the point, in *United States v. Upham*, the First Circuit rejected a similar argument:

> As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images. A sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application; and a search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs.

168 F.3d 532, 535 (1st Cir. 1999). Here, the search warrant stipulated that the potential crime for which the warrant was authorized was the possession of child pornography. *Search Warrant* at 2 (referring to "[v]isual images in any form depicting persons under the age of 18 engaged in sexually explicit conduct, as defined in 17-A M.R.S.A. § 281(4)" and stating that "[a]ll of which constitute evidence of the crimes of possession or dissemination of sexually explicit material – 17-A M.R.S.A. 283"); *see United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir. 1988) (upholding a search warrant against an argument that it was over broad by reciting the statutory definition of sexually explicit conduct referred to in the warrant). Thus, "[s]ince the warrant suggested that the digital media to be seized was related to a specific criminal activity, it cannot be classified as a generic classification that would go against the particularity requirement of the Fourth Amendment." *United States v. Crespo-Rios*, 623 F. Supp. 2d 198 (D.P.R. 2009); *United States v. Shinderman*, No. 05-67-P-H, 2006 U.S. Dist. LEXIS 8254 *58 (D. Me. Mar. 2, 2006) (observing that "[c]ourts have upheld thorough searches of entire computer systems for purposes of finding image files depicting child pornography").

       **C.    The Search of the Computer Equipment Was Conducted After the Expiration of the Search Warrant**

7

Mr. Cameron says that pursuant to the terms of the warrant, the officers were required to return the results of the search to the Maine District Court by December 31, 2007. He says that after the warrant expired, law enforcement was no longer entitled to continue to search the computers, and any information obtained from the searches after the expiration of the warrant must be suppressed.

The Fourth Amendment "contains no requirements about when the search or seizure is to occur or its duration." *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) (citation omitted). However, Rule 41(e)(2)(A)(i) of the Federal Rules of Criminal Procedure requires that a warrant must "command the officer to execute the warrant within a specified time no longer than 10 days." Fed. R. Crim. P. 41(e)(2)(A)(i). The purpose of this provision is to "prevent the execution of a stale warrant." *Syphers*, 426 F.3d at 469. As *Syphers* explained, the restrictions in Rule 41 "not only ensure that probable cause continues to exist, but also that it is the neutral magistrate, not the executing officers, who determines whether probable cause continues to exist." *Id.* (citation omitted). Here, the officers executed the warrant on the same day it was issued, well within the ten day period established by the Rule and the warrant itself.

The question turns to how long the Government may hold and continue to search property lawfully seized. Rule 41(g) allows a person whose property has been seized to move for its return. Fed. R. Crim. P. 41(g). Mr. Cameron has not filed a Rule 41(g) motion, and the Court does not interpret Mr. Cameron's motion as contending that he now has a right to have the seized items returned, since the Government contends the items are evidence that he committed the charged crime. Assuming Mr. Cameron has conceded the Government's right to retain the seized items, the issue becomes whether it can continue to search the computer files after the expiration of the ten day limitation for execution of the warrant.

In *Syphers*, the First Circuit addressed a case where the state court granted a government motion for an additional twelve months to search a computer that had earlier been seized pursuant to a warrant. 426 F.3d at 463. The government continued to search the computer during this interval and discovered evidence of child pornography. *Id.* at 464. The district court denied the defendant's motion for return of the computer evidence in part on the ground that the duration of the computer seizure was not excessive. *Id.* at 464. Addressing an appeal of the district court order, the First Circuit observed that "[a] delay in execution of the warrant under Rule 41 does not render inadmissible evidence seized, absent a showing of prejudice to the defendants resulting from the delay." *Id.* at 469. *Syphers* further commented that "[c]ourts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search." *Id.* The *Syphers* Court upheld the extended search of the computer, saying that a delay of five months "did not invalidate the search of the appellant's computer because there is no showing that the delay caused a lapse in probable cause, that it created prejudice to the defendant, or that federal or state officers acted in bad faith to circumvent federal requirements." *Id.* Applying *Syphers* standards to the instant case, there is no suggestion that the delay in searching the computer caused a lapse in probable cause, that the delay prejudiced Mr. Cameron, or that the officers acted in bad faith to circumvent legal requirements. Once the officers obtained the computers and the discs, "any danger that probable cause would cease to exist passed." *See United States v. Sturm*, No. 06-CR-342-LTB, 2007 U.S. Dist. LEXIS 12261, *19 (D. Co. Feb. 22, 2007).

*Syphers* differs from this case in that here there was no court-ordered extension of the ten-day period. Nevertheless, in support of the proposition that courts have permitted some delay in the execution of search warrants involving computers, *Syphers* cited two district court

cases: *United States v. Gorrell*, 360 F. Supp. 2d 48, 55 (D.D.C. 2004) and *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002). In *Gorrell*, a District of Columbia District Court concluded that a ten-month delay in processing data recovered from seized computers did not take the data outside the scope of the warrant when the warrant did not limit the amount of time in which the government was required to complete its off-site forensic analysis of the seized item. 360 F. Supp. 2d at 55. In *Triumph Capital*, a district court upheld an extended search of a computer beyond Rule 41(c)'s ten-day period, noting that the "warrant authorized an off-site search that could take weeks or months." 211 F.R.D. at 66 (D. Conn. 2002). The *Triumph Capital* Court wrote that "computer searches are not, and cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution." *Id.*

Other courts have come to the same conclusion. *United States v. Mutschelknaus*, 564 F. Supp. 2d 1072, 1076-77 (D.N.D. 2008); *United States v. Tucker*, No. S14:06CR337CEJ(MLM), 2007 U.S. Dist. LEXIS 98291, *39-41 (E.D. Mo. Dec. 11, 2007); *United States v. Luken*, 515 F. Supp. 2d 1020, 1038 (D.S.D. 2007); *United States v. Sturm*, No. 06-CR-342-LTB, 2007 U.S. Dist. LEXIS 12261, *19 (D. Co. Feb. 22, 2007); *In re Scranton Hous. Auth.*, 436 F. Supp. 2d 714, 728 (M.D. Pa. 2006); *United States v. Hernandez*, 183 F. Supp. 2d 468, 480 (D.P.R. 2002); *United States v. Habershaw*, No. 01-10195-PBS, 2002 U.S. Dist. LEXIS 8977, *25 (D. Mass. May 13, 2002) (stating that "[f]urther forensic analysis of the seized hard drive image does not constitute a second execution of a warrant or a failure to 'depart the premises' as defendant claims, any more than would a review of a file cabinet's worth of seized documents").

Finally, in *Upham*, the First Circuit rejected a claim that a search warrant that authorized the seizure of a computer did not authorize the retention and forensic search of its contents. 168 F.3d at 536. *Upham* stated:

> The warrant explicitly authorized the seizure of both the computer plus diskettes and the unlawful images. The images . . . were "inside" the computer or diskettes. The extraction of unlawful images from within the computer and diskettes was therefore contemplated by the warrant.

*Id.* Once the officers obtained the computers and the discs, "any danger that probable cause would cease to exist passed." *Sturm*, 2007 U.S. Dist. LEXIS 12261 at *19.

Absent any evidence that the delay in conducting a forensic inspection of the seized items resulted in a lapse of probable cause, that the delay prejudiced Mr. Cameron, or that the delay was in bad faith in an attempt to circumvent the requirements of the search warrant or the law, the Court concludes that so long as the search warrant was timely executed and the computer and the discs were seized within the period the warrant stipulated, the continued forensic inspection of the computer and the discs did not violate the Fourth Amendment, Rule 41(e), or the conditions of the search warrant itself.

### D.   The Search Warrant Affidavits and Probable Cause

Finally, Mr. Cameron contends that the affidavits that were submitted for the state court search warrant were insufficient to establish probable cause, since they were based on "uncorroborated statements of unnamed sources from Yahoo and the [National Center for Missing and Exploited Children]". *Mot.* at 18. Mr. Cameron argues that "without information concerning the reliability of the unnamed sources, the ability or opportunity of the sources to observe, and the qualifications of the sources to make conclusions, there is simply not enough information to support a finding of probable cause for the search of the house, or probable cause for the search of the computers." *Id.* at 18-19.

The First Circuit recently reiterated the definition of probable cause in the context of a search warrant:

> Probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "In determining the sufficiency of an affidavit supporting a search warrant, we consider whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search the premises." *United States v. Beckett*, 321 F.3d 26, 31 (1st Cir. 2003).

*United States v. McMullin*, 568 F.3d 1, 6 (1st Cir. 2009). The affidavits are "to be interpreted in a common-sense, rather than hypothetical or hypertechnical manner." *United States v. Garcia*, 983 F.2d 1160, 1167 (1st Cir. 1993). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois*, 462 U.S. at 236 (internal punctuation omitted); *Spinelli v. United States*, 393 U.S. 410, 419 (1969).

Mr. Cameron's main point is that the issuing justice should not have relied upon the affidavits, since they contain information from unnamed sources of unproven reliability and more specifically no information from which to assess the qualifications of the sources to reach the conclusions that the IP address here corresponded to illegal images. *Mot.* at 18. But, as the Government pointed out, the affidavits reflect that the information was coming from Yahoo! and the NCMEC, and each carries significant indicia of reliability. *Gov't's Mem. in Opp'n to Def.'s Mot. to Suppress* at 13-14 (Docket # 45) (*Gov't's Mem.*). Further, the affidavits contain substantial amounts of specificity, which lend credence to their assertions. *Id* at 14. Finally, the officers reveal that they took steps to corroborate the information through subpoenas to Time Warner, the internet service provider for Mr. Cameron, including actually uploading images of child pornography that they concluded existed on the Camerons's computers. *Id.*

After carefully reviewing the affidavits, the Court concludes that the affidavits upon which the issuance of the search warrant was based contained sufficient detailed, corroborated information from reliable sources to establish probable cause to search the Cameron home and its computers.

## III. CONCLUSION

The Court DENIES the Defendant's Motion to Suppress (Docket # 27).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT COURT JUDGE

Dated this 1st day of September, 2009