UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES CAMERON | ) | |

**ORDER ON MOTION FOR DISCOVERY, TO SHOW CAUSE, AND VINDICTIVE PROSECUTION**

The Court denies the Defendant's motion for relief based on claims of vindictive or selective prosecution.

**I.    STATEMENT OF FACTS**

On February 11, 2009, a federal grand jury issued a sixteen count indictment against James M. Cameron, alleging violations of federal criminal statutes against the possession, transportation, and receipt of child pornography. *Indictment* (Docket # 3). On May 18, 2009, Mr. Cameron moved for discovery, to show cause, and for remedies for vindictive and selective prosecution. *Mot. for Disc., to Show Cause, and Vindictive Prosecution* (Docket # 29) (*Def.'s Mot.*). The Government responded on July 1, 2009. *Gov't's Mem. of Law In Opp'n to Def.'s Pretrial Mot. for Disc., to Show Cause, and to Dismiss the Indictment for Vindictive or Selective Prosecution* (Docket # 43) (*Gov't's Mem.*). Mr. Cameron replied on July 30, 2009. *Def.'s Reply Mem. to Gov't's Mem. in Opp'n to Def.'s Mot. for Disc. Regarding Vindictive Prosecution* (Docket # 56) (*Def.'s Reply*).

Mr. Cameron's motion consists of three inter-related claims: abuse of prosecutorial discretion; buckling to institutional pressure; and, personal animus. In Part I, Mr. Cameron alleges that the manner in which the Government conducted the investigation, the grand jury, the

charging decision, and other exercises of prosecutorial discretion demonstrate that the prosecution is vindictive and selective. In Part II, he asserts that "[t]he unusual and as yet unexplained status of U.S. Attorney Silsby as "interim" U.S. Attorney for eight years, combined with a widespread institutional policy by the Bush Justice Department of vindictive prosecutions" support the view that the prosecution of Mr. Cameron is vindictive and selective. *Def.'s Mot.* at 1. Finally, in Part III, he claims that United States Attorney Silsby's "frequent disagreement on Drug Policy with Mr. Cameron and her frustration with her failure in the area of drug enforcement resulted in a deep personal animosity that further demonstrates that this prosecution is vindictive and selective."[1] *Def.'s Mot.* at 2.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Vindictive Prosecution

"A vindictive prosecution - - one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right - - violates a defendant's Fifth Amendment right to due process." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008). "[A] defendant may be penalized for violating the law, but not punished for exercising his rights." *United States v. Tobin*, 598 F. Supp. 2d 125, 128 (D. Me. 2009). "A defendant may establish a vindictive prosecution either (1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *Jenkins*, 537 F.3d at 3. "If the defendant creates a presumption of vindictiveness the burden shifts to the government to show that legitimate reasons exist for the

---

[1] On August 12, 2009, the Court held a telephone conference of counsel to discuss the status of this motion in view of the Court's sealed Order dated August 5, 2009. *Order* (Docket # 60). The Court granted the Defendant until September 11, 2009 to file a supplemental pleading to this motion to take into account the information disclosed by the sealed Order. The Defendant did not supplement this motion.

prosecution." *United States v. Lanoue*, 137 F.3d 656, 664 (1st Cir. 1998) (citing *United States v. Goodwin*, 457 U.S. 368, 376 n.8 (1982)). If the defendant can "point to specific facts that raise a likelihood of vindictiveness a district court must grant an evidentiary hearing on the issue." *Lanoue*, 137 F.3d at 665. On the other hand, there must be "some evidentiary predicate" and "merely chanting the mantra of prosecutorial vindictiveness gets a defendant nowhere." *United States v. Ortiz-Santiago*, 211 F.3d 146, 150 (1st Cir. 2000).

    **2. Selective Prosecution**

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). This broad discretion is based largely on the recognition that "the decision to prosecute is particularly ill-suited to judicial review." *Id.* Further, judicial supervision in this area "entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* Once made, prosecutorial decisions "enjoy a presumption of regularity (which includes a presumption of good faith)." *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008). In this context the presumption is "formidable; it can be overcome only by a proffer of 'clear evidence' that the prosecutor acted impermissibly in pursuing a case." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996))

By the same token, "[a]lthough prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is subject to constitutional constraints." *Wayte,* 470 U.S. at 608 (citation and internal punctuation omitted). In particular, the decision to

prosecute may not be "deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). It may also not be based on "the exercise of protected statutory and constitutional rights." *Wayte*, 470 U.S. at 608.

The evidentiary threshold that a defendant must cross to obtain discovery in aid of a selective prosecution case "is somewhat below 'clear evidence,' but it is nonetheless fairly high." *Lewis*, 517 F.3d at 25 (citation omitted). A defendant must present "'some evidence' tending to show both discriminatory effect and discriminatory intent." *Id.* (citation omitted). There must be a showing that "similarly situated individuals who do not share the protected characteristic were not prosecuted" and that the Government "chose to prosecute at least in part because of, not merely in spite of, the defendant's protected characteristic." *Id.* (citation and internal punctuation omitted).

### B. A Summary of the Allegations

#### 1. Prosecutorial Indiscretion

Mr. Cameron makes a series of allegations against his investigation, indictment and prosecution.[2] First, he says that the investigation of Mr. Cameron ran against the usual priority at both the National Center for Missing and Exploited Children (NCMEC) and the Department of Justice for the investigation of child pornography cases. To this point, the NCMEC has prioritized child pornography cases by placing them in one of five categories. In category one, the highest priority cases, a child is in imminent danger of abuse from someone who has contacted him or her on the internet. The lowest priority cases, category five, involve suspects who may have received pornography but, no communication with others exists. Mr. Cameron's case fell within category four because it involved someone who may have possessed child

---

[2] Similar to an offer of proof, the Court has generally accepted the essence of the facts in the Defendant's memorandum as true. On the other hand, the Court has not credited Mr. Cameron's occasionally hyperbolic characterizations of those facts.

4

pornography and communicated with someone other than a child. Of 165 referrals in 2007 from the NCMEC to the Maine State Police Computer Crimes Task Force (MCTF), the MCTF selected only 28 on which to obtain a search warrant. Mr. Cameron argues that the decision to search his residence ran counter to MCTF's standard practice of prioritizing child pornography cases.

Second, he claims that United States Attorney Paula Silsby displayed an inordinate interest in the case against Mr. Cameron, making an unsolicited telephone call to the state district attorney to inform him that she wanted to prosecute the case federally, even before evidence of any criminal activity had been established. Further, he says the decision to prosecute the case federally runs counter to Department of Justice policy, which encourages mere possession cases to be charged in state court.

Third, he asserts that the federal prosecutors and investigators harassed Mr. Cameron throughout the investigation. This included an inappropriate and intense focus on his workplace, which ended up causing him to be fired, and an extraordinary unearthing of Mr. Cameron's and his wife and children's private computer correspondence, reports of family credit card transactions, and everything Mr. Cameron had ever published on the internet, including an account of a family trip to Disneyworld. The federal investigators executed search warrants at the schools of Mr. Cameron's children and obtained their school records. In addition, they threatened Mrs. Cameron with a more intensiveness investigation if she did not cooperate in a manner satisfactory to them.

Fourth, Mr. Cameron says the initial inspection of the Cameron computers revealed scant evidence of child pornography, but Sergeant Glenn Lang of the MCTF insisted that the computers be re-examined. Once a referral to a federal forensic expert was rejected, he sent the

computers to Officer Scott Bradeen of the Lewiston Police Department for a redundant forensic examination. Further, he claims that Sgt. Lang leaked information about the status of the investigation to local media, which in turn began to report that Mr. Cameron was the subject of a law enforcement investigation.

Fifth, he asserts that despite his stated willingness to voluntarily surrender and repeated representations from the Assistant United States Attorney to meet with defense counsel before the indictment was returned, United States Attorney Silsby insisted on the issuance of an arrest warrant and the prosecutors reneged on their promise of a pre-indictment meeting.

Sixth, he claims the indictment is padded with duplicative, meritless, and multiplicitous charges.

Seventh, he says that the charges against Mr. Cameron are unique, because he does not have a history of sex offenses and he has not been charged with possessing a large collection of accessible child pornography, producing child pornography, or distributing child pornography.

    **2.  Institutional Pressure**

In this section, Mr. Cameron says that United States Attorney Paula Silsby's nomination as United States Attorney for the District of Maine has never been forwarded from the White House to the Senate, and eight years after her appointment, she is still serving as an interim United States Attorney. He then recounts the Bush Administration's controversial firings of United States Attorneys throughout the country in 2007, and claims that Ms. Silsby was slated for termination by the Administration. Mr. Cameron asserts that Ms. Silsby's name was removed from consideration at the last moment because of the political influence of her senatorial sponsors, Olympia Snowe and Susan Collins, and because Ms. Silsby had put into effect many Bush Administration priorities, which Mr. Cameron says included prosecutions of

child pornographers and of prominent Democrats. Mr. Cameron asserts that his prosecution came about as a result of his role as a close adviser to Stephen Rowe, the Maine Attorney General, who on December 1, 2007, had announced his decision to run for governor of the state of Maine.

### 3. Personal Animus

Throughout Ms. Silsby's term as United States Attorney until the criminal charges were brought to light, Mr. Cameron had been the chief of the drug enforcement wing of the state Attorney General's Office. Mr. Cameron asserts that during Ms. Silsby's tenure, a rancorous and unproductive relationship developed between federal and state drug enforcement agencies. This, he says, was in part due to his determination to prosecute drug cases that arose from state law enforcement investigations by using state prosecutors in state courts, and his corresponding efforts to prevent federal prosecutors from cherry picking high profile and easily provable drug cases leaving state prosecutors with lower impact and more difficult cases. Finally, Mr. Cameron referred to heated disagreements with Ms. Silsby about her determination to prosecute heroin, methadone clinic and methamphetamine cases federally. He claims that by prosecuting him, Ms. Silsby has removed him from his position at the Maine State Attorney General's Office "where he can no longer oppose her political objectives." *Def.'s Mot.* at 21.

### C. The Government's Recitation

#### 1. The Investigation and Indictment

The Government's response details the history of the Cameron investigation. It begins with two referral from the NCMEC to the Maine State Police on August 3, 2007 and September 6, 2007, which itself had been triggered by a report from the Internet Service Provider Yahoo!. Yahoo! reported locating numerous images of child pornography in the photos section of a

7

Yahoo! account. The Maine State Police Computer Crimes Unit (MSPCCU) undertook an investigation and ultimately identified the owner of the account to be Barbara Cameron, the Defendant's wife. Further investigation confirmed that Mr. Cameron was an Assistant Attorney General for the state of Maine, and that some of the pornography involved children as young as 4 to 6 years old engaging in sexual conduct. On December 21, 2007, the state executed a search warrant and seized four computers. When the computers were examined, there was evidence of internet chat between two users about sex with children, images of child pornography and related topics. In one of those conversations, the person identified himself as a married, 45 year old man with a daughter, a description that fits Mr. Cameron. Also Yahoo! profiles under the name "Jim" included a number of sexually suggestive identifiers, such as lilhottee0000. In the end of December, 2007, the Maine Attorney General referred the case to the United States Attorney's Office and the local District Attorney. The federal prosecutor assigned Assistant United States Attorney Gail Malone to the case on January 3, 2008. On February 21, 2009, a federal grand jury returned an indictment against the Defendant. The Government recites the evidence it would anticipate introducing at any trial of this case.

### D. The Court's Analysis

#### 1. Vindictive Prosecution

The legal definition of vindictive prosecution requires that the prosecution of the defendant be tied to his assertion of a protected statutory or constitutional right. *Jenkins*, 537 F.3d at 3. Nowhere in Mr. Cameron's memorandum does he specifically identify the rights that he asserted and that the prosecution violated.

The first set of contentions appears to relate to Mr. Cameron's exercise of political rights, and the second appears to relate to his exercise of his statutory obligations as an employee of

state government. The closest contention of constitutional dimension is a rather vague and circuitous accusation that because Mr. Cameron is a Democrat and was a close advisor to the Maine Attorney General, Steven Rowe, also a Democrat, and because the Maine Attorney General is a candidate for the Maine Governorship, the United States Attorney, who received her appointment while a Republican President held office, must have been seeking to discredit the Maine Attorney General in order to scuttle his chance for high elective office. At least it appears this is the theory: "To target a person with a federal criminal prosecution because he was a prominent Democrat, was a close advisor to a future Democratic gubernatorial candidate, and had exercised his discretion as a member of the executive branch of the State of Maine in a way that displeased the U.S. Attorney, is a violation of Due Process and Equal Protection, and requires the dismissal of the indictment." *Def.'s Mot.* at 3.

Though expressed in forceful accusatory language, Mr. Cameron's conspiratorial allegations do not explain why Stephen Rowe, the supposed victim of the conspiracy, would join it. It was the Attorney General himself who oversaw the initial investigation and made the referral to the federal prosecutor. The Court will not further indulge these wild and unfounded accusations, except to conclude that they do not begin to carry the Defendant's initial burden of pointing to specific facts that demonstrate a likelihood of vindictiveness entitling the Defendant to an evidentiary hearing. *Lanoue*, 137 F.3d at 665. For similar reasons, the Court draws the same conclusions about the unsupported conjecture that Mr. Cameron's policy disagreements with the federal prosecutor lead to his indictment.

### 2. Selective Prosecution

The Court reaches the same result on the claim of selective prosecution. Exactly what "protected characteristic" the Defendant is claiming remains unformed. *Lewis*, 517 F.3d at 25.

9

But, the Court readily concludes that the Defendant has failed to produce "'some evidence' tending to show both discriminatory effect and discriminatory intent." *Id.* (citation omitted). Specifically, he has not made a showing that "similarly situated individuals who do not share the protected characteristic were not prosecuted" and that the Government "chose to prosecute 'at least in part because of, not merely in spite of,' the defendant's protected characteristic." *Id.* (quoting *Wayte*, 470 U.S. at 610).

### 3. Observations

In concluding that Mr. Cameron failed to demonstrate that the prosecution has been either vindictive or selective, the Court makes the following observations:

First, the investigation did not emanate from the United States Attorney's Office. The NCMEC referred the case to the Maine State Police.

Second, state officials, not the federal prosecutor, made the decisions to pursue the investigation and to obtain the December 21, 2007 search warrant of the Cameron residence. Once the state received the NCMEC referral, the subsequent investigation was handled by Detective Laurie Northrup of the Maine State Police under the legal guidance of Carlos Diaz, an Assistant Attorney General for the state of Maine. The first time the United States Attorney was informed of the investigation was December 20, 2007, when Mr. Diaz apprised Deputy United States Attorney John Chapman of the status of the investigation. Mr. Diaz obtained and state law enforcement executed a search warrant on the Cameron residence on December 21, 2007. Contrary to Mr. Cameron's assertions, there is no evidence that the United States Attorney participated in the decision to obtain a search warrant of the Cameron residence. The Attorney General of the state of Maine formally referred the investigation to the United States Attorney in late December. The record in this case fails to substantiate that the investigational activities

10

through December 2007 of which Mr. Cameron complains had anything to do with the United States Attorney.

Third, it is utterly unremarkable that a federal prosecutor would pursue a case involving a high state law enforcement official, one with a leadership role in the state prosecution of drug crimes. The potential conflict within state law enforcement, including the state Attorney General's Office, is palpable. In fact, the Maine Attorney General's referral to the United States Attorney is consistent with his recognition that it would be difficult for his Office to prosecute the head of its drug enforcement division. The decision to take the case federally is not, in the Court's view, evidence of selective or vindictive prosecution; rather, it is consistent with sensible prosecutorial practice on the part of both state and federal prosecutors.

Fourth, the recitation of potential evidence against Mr. Cameron is sufficient to establish that the decision to proceed with an indictment was not unusual. The evidence the Government represents it can produce includes not only images of child pornography, but sexually explicit chat under suggestive screen names about child pornography and the apparent solicitation of unlawful images. There is no evidence that the United States Attorney in Maine has not prosecuted similar cases in the past.[3]

Fifth, AUSA Malone conceded that there was an agreement between the government and Mr. Cameron that he would voluntarily surrender. However, she explained that the government's position changed when she learned that Mr. Cameron had frequently and recently traveled internationally, and she became concerned about whether he would flee the country.[4]

---

[3] Based on past child pornography cases before it, the Court is skeptical that such evidence exists.
[4] The Government filed the Malone affidavit under seal. *Mot. to Seal and for Protective Order* (Docket # 50). The Court agrees with the Defendant that it should not have been sealed.

Sixth, Mr. Cameron has not demonstrated that Sgt. Lang's determination to obtain an indictment against Mr. Cameron was at the direction of the United States Attorney, or that Sgt. Lang's motivations affected prosecutorial decision-making.

Seventh, the Court firmly rejects Mr. Cameron's attempt to link past national political controversies and Ms. Silsby's status as interim United States Attorney to this case.[5]  Any relationship between Ms. Silsby's status as an interim United States Attorney and this prosecution is wholly unfounded.  Further, the timing is off regarding Ms. Silsby's supposed buckling to partisan presidential pressure.  The federal grand jury indicted Mr. Cameron on February 21, 2009, after President Bush left office and President Obama assumed the Presidency of the United States.  There is no basis to conclude that an investigation initiated by a Democrat state attorney general and indicted under a Democratic presidential administration was motivated by partisan Republicans or for that matter by politics of any kind.

Eighth, the notion that Ms. Silsby sought to discredit Mr. Rowe by prosecuting his close Democratic advisor is patently fanciful, since it was Mr. Rowe himself who made the referral to the United States Attorney.  Further, to demonstrate that he has been prosecuted because he was a Democrat, Mr. Cameron would have to demonstrate that there have been Republicans engaging in similar conduct, who have not been prosecuted.  *United States v. Rivera-Class*, 216 F. Supp. 2d 1, 3 (D.R.I. 2002) (stating that "[a] defendant claiming that he was singled out for prosecution because of his political affiliation must demonstrate that similarly situated individuals of a different political party were not prosecuted"); *see Armstrong*, 517 U.S. at 465 (1996).

Ninth, the claim that Ms. Silsby bore a personal animus against Mr. Cameron and her hatred of him because of federal-state policy disagreements motivated the prosecution is entirely unsupported by the record.  As noted, the investigation began as a state investigation and it was

---

[5] Portions of Mr. Cameron's motion read more like a partisan political editorial than a legal argument.

Mr. Cameron's mentor, Attorney General Rowe, who referred the matter to the federal prosecutor. In fact, in light of the background of this investigation and prosecution, Mr. Cameron's allegation borders on reckless.

Tenth, how to charge Mr. Cameron, including the number of counts and the nature of the charges, falls well within the scope of prosecutorial discretion.

In sum, Mr. Cameron's claims of vindictive and selective prosecution are unfounded, are contradicted by the evidence in this record, and do not generate the right to further discovery.

### III.   CONCLUSION

The Court DENIES the Defendant's Motion for Discovery, to Show Cause, and Vindictive Prosecution (Docket # 29). The Court also ORDERS the Affidavit of Gail F. Malone unsealed. *Motion to Seal and for Protective Order* (Docket # 50).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2009