UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES CAMERON | ) | |

**ORDER ON MOTION FOR DISCOVERY AND MOTION FOR
ADDITIONAL DISCOVERY**

The Court grants in part and denies in part Defendant James Cameron's Motion for Discovery and grants in part and denies in part Mr. Cameron's Motion for Additional Discovery.

**I.   STATEMENT OF FACTS**

On February 11, 2009, a federal grand jury indicted James Cameron for transporting, receiving, and possessing child pornography in violation of federal criminal law. *Indictment* (Docket # 3); 18 U.S.C. §§ 2252A(a)(1), 2252A(a)(2), 2252A(a)(5)(B). On May 7, 2009, Mr. Cameron moved for discovery. *Mot. for Disc.* (Docket # 25). The Government responded on July 1, 2009. *Gov't's Mem. in Resp. to Def.'s First Mot. for Disc.* (Docket # 44) (*Gov't's Mem.*). Mr. Cameron replied and moved for additional discovery on July 30, 2009. *Def.'s Reply to Gov't's Mem. in Resp. to Def.'s Mot. for Disc. and Def.'s Mot. for Additional Disc.* (Docket # 57) (*Def.'s Reply*).

In his first motion, Mr. Cameron requests that the Government produce and or provide access to: 1) the original or a copy of the Yahoo! photo server and server files for all images; 2) the names, addresses, and dates of birth of the Yahoo! employee(s) involved in the National Center for Missing and Exploited Children (NCMEC) referral; 3) the physical location of the original server files; 4) the names, addresses, and telephone numbers of those individuals

responsible for the maintenance of these files; 5) the forensic data produced as a result of the search and seizure of computers and computer parts found at the Cameron residence; 6) the hard drives and components seized from the Cameron residence; and, 7) the tangible evidence obtained from any third party. In his second motion, Mr. Cameron makes twenty additional discovery demands, ranging from the name of the developer of the "chat parser" software to a "description of how the government intends to lay foundation for the authenticity and reliability of the test results generated by the software in this case and that the software is suitable for use as a forensic tool."[1] *Def.'s Reply* at 7.

The sequence of events leading to these charges is significant.[2] The police investigation of Mr. Cameron began in August and September 2006, when state law enforcement officers received referrals from the National Center for Missing and Exploited Children (NCMEC). The NCMEC referral had itself been precipitated by a referral from the Internet Service Provider Yahoo!, which reported finding numerous images of child pornography in the photos section of a Yahoo! account later determined to be in the name of the Defendant's wife. On December 21, 2007, the state performed a search of the Cameron home pursuant to a search warrant and seized four computers, which were later examined and, according to the Government, found to contain images of child pornography.

## II.    GENERAL BACKGROUND

### A.    Rule 16 and the Adam Walsh Act

Federal Rule of Criminal Procedure 16 provides in part:

---

[1] In reviewing the reply, it is difficult to know when Mr. Cameron is reemphasizing his earlier request for documents or objects and when he is requesting an entirely different set of documents or objects. The Court has done its best to address the old and new demands for production, but if it missed a substantive request, Mr. Cameron is free to bring it to the Court's attention.

[2] For a general description of the background of the investigation leading to the federal charges, *see United States v. Cameron*, Docket No. 09-24-B-W, 2009 U.S. Dist. LEXIS 85129 (D. Me. Sept. 15, 2009).

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession custody, or control and:
> (i)     the item is material to preparing the defense;
> (ii)    the government intends to use the item in its case-in-chief at trial; or
> (iii)   the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).[3]  If the conditions of Rule 16(a)(1)(E) are met, a defendant is entitled to discovery of documents and tangible objects as "a matter of right." 2 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 254 (4th ed. 2009).

In 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, which statutorily limits a defendant's access to property or material constituting child pornography. Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, 629 (July 27, 2006). This provision requires a court to deny "any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography." 18 U.S.C. § 3509(m)(2)(A). The Government is required to provide the defendant with "ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." *Id*. § 3509(m)(2)(B).

        **B.**     **The Defendant's "Interrogatory-Like" Requests**

The Court notes that it struggled with the way the Defendant framed some discovery demands. A significant number of the requests seemed to presume that the Government is required either to create a document in order to respond or to frame a response similar to an answer to a civil interrogatory. For example, Mr. Cameron demanded that the Government produce:

---

[3] Apart from the Government's passing reference to Rule 16, neither party cites caselaw to support their positions.

> A description of the disposition of any images sent by Yahoo! to NCMEC but not retained by them or not transmitted to the MSPCUU (Maine State Police Computer Crimes Unit).

*Def.'s Reply* at 6. Another example is:

> A description of how the government intends to lay foundation for the authenticity and reliability of the test results generated by the software in this case and that the software is capable of producing accurate and reliable results; and that the software is suitable for use as a forensic tool.

*Id.* at 7. These document demands sound more like civil interrogatories under civil Rule 33 than document requests under criminal Rule 16(a)(1)(E). However, Rule 16(a)(1)(E) "by its terms is directed to materials that the government actually possesses" and does not apply to a document until it is created. *United States v. Amaya-Manzanares*, 377 F.3d 39, 42 (1st Cir. 2004). The Court is unaware of any authority that would require the Government to manufacture a document in order to respond to a Rule 16(a)(1)(E) document request and, therefore, has interpreted the interrogatory-like demands as only asking for existing documents or existing tangible things.

The way Mr. Cameron has elected to phrase his discovery demands, coupled with the Government's affirmative representation that it has opened its file to the defense, has caused the Court to issue orders in the alternative. If the document would be discoverable if it exists, the Court orders the Government to turn it over. If an otherwise discoverable document does not exist, the Court will not require the Government to manufacture it.

      C.     **Government's "Open Book" Response**

In its response, the Government emphasized that it has proceeded with this prosecution on an "open book" discovery basis. *Gov't's Mem.* at 1. It represented that it has turned over to the Defendant nearly 800 pages of documentary evidence and six DVDs containing digital evidence. *Id.* Further, on June 12, 2009, it provided additional discovery relating to forensic

work performed before Lt. Scott Bradeen of the Lewiston Police Department performed a forensic examination. *Id.*

### III.    DISCUSSION

#### A.    First Motion for Discovery

##### 1.    Access to Original and/or Copies of Servers and/or Server Files

Mr. Cameron's first request demands:

> Access to the original Yahoo[!] photo album server and server files for all images, including non-pornographic images, related to all user name accounts referenced in discovery, as well as any copy of the hard drive of said server. Access to the original authentication server files utilized during any login or logout in relation to any usernames mentioned in discovery, and original server or system files in relation to IP address capture, recording and preservation relevant to the facts of this case. Access to original Yahoo! server containing all e-mail communications relating to said user accounts, including any copies of related data. Access to original Yahoo! server containing recorded text of any and all internet messaging (IM), chat logs, or any other form of communication initiated by any person logged in under any of said user names, including any copies of related data.

*Def.'s Mot.* at 6. Although the servers and/or server files are "tangible objects" within the meaning of Rule 16(a)(1)(E), the Government maintains that these items are not within its possession, custody, or control, and the Government has provided the Defendant with the names and business addresses for Yahoo!'s in-house general counsel, its compliance director, and its compliance paralegal to allow Mr. Cameron, should he desire to do so, to contact Yahoo! and directly obtain these tangible items.

In the face of the Government's common sense response that it cannot be ordered to produce what it does not have, Mr. Cameron has not made any representations or presented any evidence that would allow the Court to conclude otherwise. Instead, he simply renews his production request. *Def.'s Reply* at 2. The Yahoo! and Google servers and server files do not

5

fall under the scope of Rule 16 and are not subject to a Rule 16(a)(1)(E) request. The Court denies this request for production.

### 2. Names, Addresses, Birthdates and Phone Numbers of Yahoo! Employees

Mr. Cameron's second request demands:

> Names, addresses and dates of birth of any Yahoo! [e]mployee who identified or reviewed potential illegal images, or who transmitted (including electronically) information and images referenced in discovery to NCMEC, or who created copies of any said information or images provided to NCMEC, or who handled any of the said preserved or recorded data, including but not limited to support staff, mailroom employees, or messengers.

*Def.'s Mot.* at 6-7. In response, the Government maintains that it has disclosed all information in its possession from Yahoo!, including employee information. Further, as earlier noted, the Government provided the Defendant with the names and business addresses of Yahoo's general counsel, compliance director, and compliance paralegal. There is no suggestion from Mr. Cameron that the Government actually has possession, custody, or control of this information or that it has a document, which it has not produced, that would be responsive to this request.[4] The Court denies this request for production.

### 3. Physical Location of Server Files or Recorded Data

Mr. Cameron's third request asks for:

> Physical location and address of the original server files or recorded data described above, regardless of format.

*Def.'s Mot.* at 7. In its response, the Government stated that it is its understanding that "the server files relating to the referrals at issue in this case no longer exist." *Gov't's Mem.* at 3-4. It

---

[4] This request is another example of interrogatory-style discovery demands seeping into Mr. Cameron's Rule 16 discovery request. Mr. Cameron does not explain why the Government would have possession, custody, or control of a Yahoo! list of all support staff, mailroom employees, or messengers who handled preserved or recorded data that contained potentially illegal images.

6

further states that "[o]nly Yahoo! could answer this question definitively." *Id.* at 4. There is no suggestion that the server files or recorded data are within the Government's possession, custody, or control or that there is a document that the Government has failed to produce that contains information as to the whereabouts of the server files or recorded data. The Court denies this request for production.

### 4. Yahoo! Contacts

Mr. Cameron's fourth request asks for:

> Names, address[es] and telephone numbers of [the] person responsible for maintenance of said files and data at any time subsequent to their creation.

*Def.'s Mot.* at 7. The Government has responded by supplying the names and contact information for the three Yahoo! employees with whom it has had contact. *Gov't's Mem.* at 4. There is no suggestion that the Government has a document which it has not produced that contains this specific information. The Court denies this request for production.

### 5. Forensic Information

Mr. Cameron's fifth request reads:

> All notes, correspondence, work papers, reports, memoranda, rough notes, drafts or writings of any kind, prepared by or in possession of Glen Lang, Scott Bradeen, Dawn Ego, Inez Dudley, Andrea Ogren, Manning Jeter and any other person who has conducted a forensic examination of, or otherwise handled, or assisted in the handling and/or examination of the computers and/or hard drives seized from Mr. Cameron's residence on December 21, 2007. This request specifically includes such writings prepared by the evidence technician who participated in the search of Mr. Cameron's residence and the seizure of Mr. Cameron's computer equipment, including the name, address, and telephone number of said evidence technician.

*Def.'s Mot.* at 7. The Government represented in its response that on June 12, 2009, it turned over to the Defendant "all documentation of any forensic work that was performed before the forensic case was reassigned to Det. Bradeen." *Gov't's Mem.* at 4-5. It is unclear whether the

7

Government's June 12, 2009 production satisfied this request; Mr. Cameron did not react to this portion of the Government's response when he replied on July 30, 2009. Absent a suggestion to the contrary from Mr. Cameron, the Court assumes the Government has fully responded to this request. The Court denies this request for production.

### 6. Hard Drives

Mr. Cameron's sixth request demands:

> Access to all hard drives or other components seized from the Cameron residence, as well as any copies of said drives or other seized storage medium.

*Def.'s Mot.* at 7. In its response, the Government states that it has "offered from the outset of the case to make the evidence available for Defendant's inspection. While Defendant will not be permitted to conduct forensic exams on the original media, his expert will be allowed to work from forensically-verified exact copies, and will be invited to verify their integrity himself." *Gov't's Mem.* at 5. The Government also said that regarding the pornographic images, Mr. Cameron "has not taken advantage of these offers." *Id.* at 2. Mr. Cameron did not respond to this assertion. Based on the information before it, the Court concludes that the Government's offer for inspection complies with its discovery obligations, particularly in light of the constraints of 18 U.S.C. § 3509(m)(2). *See United States v. O'Rourke*, 470 F. Supp. 2d 1049, 1057 (D. Ariz. 2007). The Court grants this request for production, subject to the restrictions of 18 U.S.C. § 3509(m).

### 7. Third Party Documents

Mr. Cameron's seventh request reads:

> Access to all original papers, records, writings, optical discs, or objects obtained by search warrant or subpoena from any third-party in relation to this case.

*Def.'s Mot.* at 8. The Government interprets this as a request for access to non-digital evidence seized from the Defendant, and notes that it has made this information available to him. *Gov't's Mem.* at 5-6. It seems more likely, however, that the request is directed to any information the Government obtained from subpoenas it issued to third parties such as Yahoo! or Google.

In his Reply, Mr. Cameron referred to the affidavit of Laurie Northrup, which the Government filed in response to a separate defense motion. *Def.'s Reply* at 2. The Northrup affidavit confirms that in response to its subpoenas, the Government received documents and other information from Yahoo!. *Aff. of Laurie Northrup* Attach. 3 (Docket # 46). Specifically, the Northrup affidavit refers to receiving stored emails relating to certain screen names, the Yahoo! photo albums for certain screen names, and connection logs from both Yahoo! and Google for several screen names. *Id.* Mr. Cameron says that he has never received the documents that Ms. Northrup confirmed the Government received from Yahoo! and Google. The Court concludes that Mr. Cameron is entitled to this discovery, and grants this request for production, subject to the limitations imposed by 18 U.S.C. § 3509(m)(2). *United States v. Poulin*, 588 F. Supp. 2d 64, n.3 (D. Me. 2008).

To be more precise, regarding the photo albums, even though Mr. Cameron says that the Government should redact the images of child pornography from the photo albums it received from the Internet Service Providers and forward the non-pornographic images, the Court is unaware why the Government's offer for inspection should not satisfy the Defendant's need for access. To require the Government to sift through the photo albums, redact non-pornographic images, and prepare a special document runs against the principle that the Government is not required to create a document to respond to a defense request for discovery. In the event Mr.

9

Cameron has difficulties with the access the Government has accorded, he is free to reinitiate his request with a more specific justification.

On the other hand, stored emails and connection logs appear to be documents in tangible form, not subject to the limitations of 18 U.S.C. § 3509(m). In his reply, Mr. Cameron expanded this list to include all recorded text, including internet messaging and chat logs. *Def.'s Reply* at 4. The Court orders the Government to produce those documents to the Defendant.[5]

### B. Motion for Additional Discovery

On July 30, 2009, Mr. Cameron moved for further discovery, demanding additional items. *Def.'s Reply* at 1-9.

#### 1. NCMEC Personnel

Mr. Cameron's first additional request asks for:

> Names, addresses and dates of birth of any NCMEC personnel who identified or reviewed potential illegal images, or who transmitted (including electronically) information and images referenced in discovery to any law enforcement agency, or who created copies of any said information or images provided by NCMEC to any law enforcement agency, or who handled any of the said preserved or recorded data, including but not limited to support staff, mailroom employees, or messengers.

*Id.* at 5. For the same reasons explained concerning the similar request for Yahoo! material, the Court agrees that the Government is required to turn over documents responsive to this request, but the Court does not agree that the Government is required to manufacture such a list or to produce documents over which it has no possession, custody, or control. The Court denies this request for production.

#### 2. NCMEC Personnel

---

[5] Mr. Cameron says the Government is contending that some of this information has been purged or destroyed by Yahoo! and Google. It is by no means clear that the Government and Mr. Cameron are discussing the same material. In any event, the Court orders the Government to turn over the emails and connection logs it received from the Internet Service Providers and that remain in its possession, custody, or control.

> Mr. Cameron's second additional request demands:
>
> Names, addresses and dates of birth of any NCMEC personnel who prepared any NCMEC report relating to this case.

*Id.* Again, if the Government has this information, it must turn it over; if it does not, it is not required to create or obtain it. The Court grants the request in part and denies it in part.

### 3. NCMEC Documents

> Mr. Cameron's third additional request asks for:
>
> In addition, copies of any and all rough notes, work papers, witness statements, narrative reports, correspondence or the like, whether in paper or electronic form, prepared and/or kept by said NCMEC employee(s) relating to this case.

*Id.* If the Government has this information, it must turn it over; if it does not, it is not required to create or obtain it. The Court grants the request in part and denies it in part.

### 4. NCMEC Servers

> Mr. Cameron's fourth additional request demands:
>
> Access to any original NCMEC servers containing any images associated with any Yahoo[!] user account referenced in the discovery.

*Id.* For the reasons explained earlier, as there is no showing that the Government has possession, custody or control of these servers, the Government is not required to produce them. The Court denies this request for production.

### 5. Addresses of the Location of the NCMEC Servers

> Mr. Cameron's fifth additional request asks for:
>
> The address of the location of said servers.

*Id.* If the Government has a document that reveals the location of the NCMEC servers, it must produce the document; if the Government does not, it is not required to create one. The Court grants the request in part and denies it in part.

### 6. Persons Who Accessed Images

Mr. Cameron's sixth additional request demands:

> The name, address and date of birth of any person who accessed said images either on site or remotely.

*Id.* at 6. If the Government has a document that contains this information, it must produce the document; if the Government does not, it is not required to create one. The Court grants the request in part and denies it in part.

### 7. Hard Copies of Yahoo Images

Mr. Cameron's seventh additional request demands:

> Hard copies of all Yahoo[!] images contained in Category One, above, for each user-name referenced in the discovery. Certainly, illegal images may be physically redacted, but the Government should be ordered not to redact any legal images.

*Id.* at 6. Mr. Cameron explains that "Category One" is a category referenced in the NCMEC reports and consists of "a group of photos associated with a user-name that were found on a Yahoo[!] server that 'may' contain pornography." *Id.* If the Government possesses these images, for the reasons previously explained, the Court will not compel the Government to create a new document to comply with this request; the Government has represented that it has accorded the Defendant access to all images in accordance with the limitations of 18 U.S.C. § 3509(m). To the extent Mr. Cameron is demanding images that NCMEC possesses, there has been no showing that the Government has possession, custody, or control of the NCMEC images. The Court grants the request in part, subject to the restrictions in 18 U.S.C. § 3509(m), and denies it in part.

### 8. Images Sent By Yahoo! to NCMEC

Mr. Cameron's eighth additional request demands:

> A description of the disposition of any images sent by Yahoo[!] to NCMEC but not retained by them or not transmitted to the MSPCUU.

*Id.* at 6.  If the Government has a document that is responsive to this request, it must produce it.  If the Government does not, it is not required to create one.  The Court grants the request in part and denies it in part.

### 9. "Chat Parser" Software

Mr. Cameron's ninth additional request asks for:

> A copy of the "chat parser" software, the user's name for the software, as well as any and all independent tests done to verify the accuracy and reliability of the software.

*Id.* at 7.  Mr. Cameron references an affidavit by Sgt. Bradeen in which he mentions using a software program called "chat parser" to "translate" the text of Google Hello chats.[6]  Mr. Cameron notes that "details of this software have not been provided in discovery."  *Id.*  The Government has not responded to Mr. Cameron's request for additional discovery, so the Court can only guess whether the request seeks a tangible object or a document that the Government possesses.[7]  If the "chat parser" software is a tangible object in the Government's possession, custody, or control, the Court orders the Government to produce it to Mr. Cameron.  Similarly, if the Government has documentation of independent tests on the "chat parser" software, the Court orders the Government to produce those documents to the Defendant.  On the other hand, if the

---

[6] Sgt. Bradeen's affidavit states in part:
> My forensic examination revealed text fragments indicating that the Google Hello chat on the seized computers was sexually explicit and appeared to relate to children.  After finding the text garments, I received a forensic software program that allowed me to translate – from the hard drives of the seized computers – the text of each chat session *along with* the images the users shared during their chat.  Using this software, I recovered from a desktop computer seized from the Cameron residence multiple chat sessions that took place on June 12 and June 13, 2007.  I also recovered from the laptop computer seized from the Cameron residence two chat sessions that took place on August 11, 2007.

*Aff. of Scot Bradeen* at ¶ 5Attach. 2 (Docket # 46) (emphasis in original).

[7] The Court suspects that "chat parser" software describes a downloadable program, which may be as available to Mr. Cameron as it is to the Government.

software and testing are not tangible objects or documents, the Court does not order the Government to produce a downloaded software program which goes beyond the scope of Rule 16. The Court grants the request in part and denies it in part.

### 10. The Name of the Developer of the "Chat Parser" Software

Mr. Cameron's tenth additional request asks for:

> The name of the developer of the software.

*Id.* This request seems more like an interrogatory than a request for an existing document. However, if the Government has a document that contains the name of the developer of the "chat parser" software that Sgt. Bradeen used in his forensic examination of the Google Hello chats, the Court orders it to produce it; if it does not have such a document, the Court will not require the Government to obtain it. The Court grants the request in part and denies it in part.

### 11. The Name of the Person Who Downloaded the Software

Mr. Cameron's eleventh additional request demands:

> The name of the person who downloaded the software that was used in this case.

*Id.* Again, this request seems more like an interrogatory than a request for an existing document. However, if the Government has a document that contains the name of the person who downloaded the software that Sgt. Bradeen used in his forensic examination of the Google Hello chats, the Court orders it to produce it; if it does not have such a document, the Court will not require the Government to obtain it. The Court grants the request in part and denies it in part.

### 12. The Version Number, or Other Designation of the Software

Mr. Cameron's twelfth additional request asks for:

> The version number, or other designation of the software.

*Id.* This request seems more like an interrogatory than a request for an existing document. However, if the Government has a document that contains the version number or other designation of the software that Sgt. Bradeen used in his forensic examination of the Google Hello chats, the Court orders it to produce it; if it does not have such a document, the Court will not require the Government to obtain it. The Court grants the request in part and denies it in part.

### 13. The Date and Time the Software Was Used

Mr. Cameron's thirteenth additional request asks for:

The date and time that the software used in this case was downloaded.

*Id.* This request seems more like an interrogatory than a request for an existing document. However, if the Government has a document that contains the date and time that the software that Sgt. Bradeen used in his forensic examination of the Google Hello chats was downloaded, the Court orders it to produce it; if it does not have such a document, the Court will not require the Government to obtain it. The Court grants the request in part and denies it in part.

### 14. The Cost and Payor of the Software

Mr. Cameron's fourteenth additional request asks for:

The cost of the download of the software and the identity of the person/entity who/that paid for the software.

*Id.* The Court is having difficulty understanding how this information would be "material to preparing the defense." Fed. R. Crim. P. 16(i). Without some suggestion as to its materiality, the Court declines to order the Government to search through its purchase orders to find and produce this documentation, if it exists. The Court denies this request for production.

### 15. The Website From Which the Software Was Downloaded

Mr. Cameron's fifteenth additional request demands:

15

> The website from which the software used in this case was downloaded.

*Id.* This request seems more like an interrogatory than a request for an existing document. However, if the Government has a document that contains the date and time that the software that Sgt. Bradeen used in his forensic examination of the Google Hello chats was downloaded, the Court orders it to produce it; if it does not have such a document, the Court will not require the Government to obtain it. The Court grants the request in part and denies it in part.

### 16. The Government's Description of How It Intends to Lay a Foundation for the Authenticity and Reliability of the Test Results

Mr. Cameron's sixteenth additional request demands:

> A description of how the government intends to lay [a] foundation for the authenticity and reliability of the test results generated by the software in this case and that the software is capable of producing accurate and reliable results; and that the software is suitable for use as a forensic tool.

*Id.* The way this request for documents is phrased sounds much more like an interrogatory than a request for production of documents. The Government is not required to create a document that describes its trial strategy, including how it intends to secure the admissibility of trial testimony. The Court will not order the Government to create a document that would reveal its trial tactics. The Court denies this request for production.

### 17. The Original Laptop Computers

Mr. Cameron's seventeenth additional request asks for:

> Provide access to these original laptop computers.

*Id.* at 8. Mr. Cameron says that Detective Northrup confirmed that the officers who performed the search of the Cameron residence accessed the Cameron computers using their laptop computers. *Id.* Mr. Cameron says that his expert Thomas Fahey would testify that this method

of access to the Cameron computers ran a risk of contamination, and he demands access to the officers' laptop computers for his expert's examination. *Id.* The Government has not responded.

Mr. Cameron's representation that his expert has raised contamination concerns is sufficient to require that the Government provide access to the officers' laptops. However, the Court assumes that the information on the officers' laptops is not exclusively devoted to Mr. Cameron's case and further may contain images the distribution of which is limited by 18 U.S.C. § 3509(m). The Court preliminarily orders the Government to provide the Defendant's expert access to the laptops under such terms as are consistent with maintaining the privacy of unrelated law enforcement investigations and with the restrictions of § 3509(m). The parties are free to supply the Court additional information on this issue and to seek an amended order. The Court grants the request in part and denies it in part.

### 18. A List of All Activities

Mr. Cameron's eighteenth additional request demands:

> Provide a list of all activities the laptop computers were used for following their use at the Cameron home.

*Id.* As phrased, this request for documents sounds more like an interrogatory than a request for production of documents. The Government is not required to create a document that describes how the officers who were involved in the Cameron search later used their computers for the investigation of other law enforcement activity. The Court does not understand the materiality of such information, even assuming it is contained on an existing document. The Court denies this request.

### 19. Names of Investigating Officers

Mr. Cameron's nineteenth additional request asks for:

> Provide the names, addresses, and dates of birth of the officers or agents that used these computers at the Cameron home or afterward.

*Id.*  Presumably the Government through its open book discovery practice has already supplied the Defendant with the police reports that were generated at the time of the execution of the Cameron search warrant.  The Court is not inclined to violate the officers' privacy rights by requiring the Government to reveal their home addresses or dates of birth.  The Court is not convinced that the names of officers who used the laptop computers after the Cameron search is material.  The Court denies this request.

### 20.  Specify Which Cameron Hard Drives Were Accessed By Which Laptop Computers

Mr. Cameron's twentieth additional request asks for:

Specify which Cameron hard drives were accessed by which laptop computers.

*Id.*  As phrased, this request for documents sounds more like an interrogatory than a request for production of documents.  The Government is not required to create a document that describes which laptop accessed which Cameron computer.  However, if the Government has such a document, the Court orders it to produce it to the Defendant.

### IV.   CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Mr. Cameron's Motion for Discovery (Docket # 25); the Court GRANTS IN PART and DENIES IN PART Mr. Cameron's Motion for Additional Discovery (Docket # 57).[8]

---

[8] The Court's granting of these motions is premised on the Court's speculation that the Government may have possession, custody, or control of the tangible objects or documents that it has not as yet produced.  If – as the Government has represented – the Government has already turned over or allowed access to all discoverable objects or documents, then it is unnecessary for the Government to produce or allow access to discoverable material that it has already supplied to the Defendant.  Thus, to the extent it orders affirmative relief, the Order may be merely precatory.

SO ORDERED.

/s/ John A. Woodcock, Jr.<br>
JOHN A. WOODCOCK, JR.<br>
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of October, 2009