UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES M. CAMERON | ) | |

### ORDER DISMISSING WITHOUT PREJUDICE GOVERNMENT'S MOTION FOR RECONSIDERATION AND A HEARING ON ORDER APPOINTING COUNSEL

The Court dismisses without prejudice the Government's motion for reconsideration and a hearing on its order appointing counsel to represent the Defendant. The Court concludes that in the circumstances of this case, the Government's motion would constitute a diversion from the main task before the Court and that the issues the Government is pressing are better addressed later.

**I.    STATEMENT OF FACTS**

    **A.    Procedural History**

On December 21, 2007, James Cameron became aware that he was the target of a child pornography investigation when state law enforcement agents executed a search warrant of his home in Hallowell, Maine. *Order on Mot. for Disc., to Show Cause, and Vindictive Prosecution* at 7-8 (Docket # 73) (describing the events leading up to and including the execution of the search warrant). Shortly thereafter, he retained Peter Rodway as his attorney. *Mot. for Disc., to Show Cause, and Vindictive Prosecution* at 8 (Docket # 29). On February 11, 2009, in a sixteen count indictment, a federal grand jury indicted Mr. Cameron charging him with possession, receipt, or transportation of child pornography. *Indictment.* Mr. Rodway filed a flurry of motions, which were briefed by counsel and resolved by Order. On January 4, 2010, the Court

set the trial of the case for April 10, 2010.  *Order* (Docket # 101).  On February 26, 2010, Attorney Rodway moved to withdraw as Mr. Cameron's defense counsel.  *Mot. to Withdraw* (Docket # 109).  On March 5, 2010, the Magistrate Judge after a hearing granted the motion to withdraw and ruled that Mr. Cameron qualified for appointment of counsel.  *Order on Mot. to Withdraw and for Appointment of Counsel* (Docket # 116).  Mr. Cameron filed a financial affidavit, which the Court reviewed, and based on its contents, on March 8, 2010, the Court approved his request for appointed counsel, and appointed Attorney Michael Cunniff to represent the Defendant.  *Financial Decl.* (Docket # 118).  Trial is currently scheduled for the June term of Court.

  **B.**  **The Government's Motion**

On March 16, 2010, the Government moved for reconsideration of the Court Order appointing defense counsel to represent Mr. Cameron.[1]  *Gov't's Mot. for Recon. and a Hearing on Order Appointing Counsel* (Docket # 120) (*Gov't's Mot.*).  The Government noted that Mr. Cameron submitted an affidavit that revealed:

> In the declaration, the defendant represented that he was divorced, residing at the marital residence, employed by "Arrow Jewelry Finding, LLC" of West Bloomfield, Michigan, and had net monthly wages of about $2,200.  He claimed that he had a "Life Estate (non-assignable) in 3 season cottage," and a 1999 Audi worth $1,500.  He disclosed about $30,000 in credit card debt, and about $1,200 in monthly credit card payments.  He listed household expenses of $500 for groceries and $940 for insurance "for wife and 2 children and self."  He claimed no pension income or other assets.

*Id.* at 2.  The Government proffered that at a hearing, it would offer the following:

1) The Judgment of Divorce dated February 10, 2010 between the Defendant and his wife awarded Mr. Cameron's interest in their Hallowell residence to his wife;

---

[1] The Government has standing to raise this issue.  *United States v. Harris*, 707 F.2d 653, 662 (2d Cir. 1983); *United States v. Szypt*, 253 F.R.D. 5, 7 (D. Me. 2008).

2) Mr. Cameron's interest in real property in Rome, Maine (the 3 season cottage) was awarded to both Mr. Cameron and his wife.  Attached to the Judgment was a proposed deed conveying Mr. Cameron's fee interest in the property to his wife, but reserving a life estate to him for "the right of possession and occupancy" "during the full term of his natural life";

3) Mr. Cameron's gross income was $25,000 and his wife's was $45,000;

4) Mr. Cameron received "all furniture, furnishings, and household goods" at the Rome, Maine property and he was required to pay "property taxes, liability and fire insurance" and to maintain the property;

5) Mr. Cameron was required to pay health insurance in the amount of $250 per month for his daughter until April 30, 2010;

6) Mr. Cameron transferred to his wife thirty-five percent interest in Arrow Jewelry Findings, LLC;

7) The assessed value of the Hallowell residence is $174,600, which is encumbered by a mortgage that his wife agreed to pay;

8) The assessed value of the Rome, Maine property is $141,000;

9) No quitclaim deed has been filed on the Rome, Maine property confirming the life estate provision of the divorce judgment; and,

10) Mr. Cameron failed to include any pension assets or allocation from the Maine Attorney General's Office, a place he worked for approximately ten years.

*Id.* at 3-5.  The Government asks the Court to reconsider its finding that Mr. Cameron qualifies for court appointed counsel.  *Id.* at 8.

## II. DISCUSSION

### A. Legal Standards

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  Facing charges that potentially impose lengthy terms of incarceration, James Cameron has the right to counsel.  *Gideon v. Wainwright*, 372 U.S. 335

(1963). To secure Mr. Cameron's right to counsel, Congress enacted the Criminal Justice Act of 1964 (CJA),18 U.S.C. § 3006A, which authorizes the district court to appoint counsel for an eligible defendant "if satisfied after appropriate inquiry that the person is financially unable to obtain counsel." 18 U.S.C. § 3006A(b); *see United States v. O'Clair*, 451 F.2d 485, 486 (1st Cir. 1971) (stating that the "purpose of the Criminal Justice Act is to furnish counsel to indigent defendants who, presumably, need counsel"). The fundamental purpose of the law is "to implement the guarantees of the sixth amendment to the Constitution by assuring to individuals accused of crime in a federal venue the availability of competent counsel to 'furnish[] representation for any person financially unable to obtain adequate representation.'" *United States v. Carnevale*, 624 F. Supp. 381, 383 (D.R.I. 1985) (quoting 18 U.S.C. § 3006A(a)).

Once a defendant is informed of his right to counsel, the Criminal Justice Act "requires the court to make an appropriate inquiry into the defendant's criminal status to determine whether the defendant is entitled to appointed counsel." *United States v. Foster*, 867 F.2d 838, 841 (5th Cir. 1989). The burden, however, rests on the defendant to "establish insufficient financial means to employ counsel." *Id.* Though the term "indigency" is often used as shorthand, the statutory standard is a defendant's "financial inability" to obtain counsel, a "less stringent requirement than . . . indigency." *Id.* at 839; *United States v. de Hernandez*, 745 F.2d 1305, 1310 (10th Cir. 1984). In the context of the right to appointed counsel, "financial inability" is a "relative concept." *Hardy v. United States*, 375 U.S. 277, 289 n.7 (1964) (Goldberg, J., concurring).

In *United States v. Barcelon*, the Tenth Circuit catalogued some factors courts typically examine in addition to the defendant's assets, liabilities, income, and obligations:

> Other factors which courts have considered include: the needs of the defendant and his family, *United States v. Harris*, 707 F.2d 653, 661 (2nd Cir.), *cert. denied*,

4

> 464 U.S. 997, 78 L. Ed. 2d 688, 104 S. Ct. 495 (1983); *U.S. v. Bracewell*, 569 F.2d 1194, 1200 (2nd Cir. 1978); the amount the defendant posted as bail, see *VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases* para. 2.04 at 2-11 (1987); the expense and extent of legal services which the defendant requires, *Harris*, 707 F.2d at 661, *United States v. Coniam*, 574 F. Supp. 615, 618 (D. Conn. 1983); *United States v. Hennessey*, 575 F. Supp. 119, 121 (N.D.N.Y. 1983), *aff'd* 751 F.2d 372 (2nd Cir. 1984); amounts given the defendant by others for limited purposes only, *Bridges v. United States*, 588 F.2d 911, 912 (4th Cir. 1978); *United States v. Bursey*, 515 F.2d 1228, 1236 (5th Cir. 1975); whether the defendant has secreted assets, *United States v. Rubinson*, 543 F.2d 951, 964 (2nd Cir.), *cert. denied*, 429 U.S. 850, 97 S. Ct. 139, 50 L. Ed. 2d 124 (1976); *United States v. Schmitz*, 525 F.2d 793, 794-95 (9th Cir. 1975); and the availability of income to the defendant from other sources such as a spouse, *United States v. Caudle*, 758 F.2d 994 (4th Cir. 1985), or trusts, estates or the like. *See, e.g., United States v. Kahan*, 415 U.S. 239, 39 L. Ed. 2d 297, 94 S. Ct. 1179 (1974); *Schmitz*, 525 F.2d at 794-95. In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility. *See United States v. Binder*, 794 F.2d 1195, 1202 (7th Cir.), *cert. denied*, 479 U.S. 869, 107 S. Ct. 234, 93 L. Ed. 2d 159 (1986); *United States v. Kelly*, 467 F.2d 262, 266 (7th Cir. 1972); *United States v. Martinez-Torres*, 556 F. Supp. 1275, 1280 (S.D.N.Y. 1983); *United States v. Wright*, 478 F. Supp. 1178 (S.D.N.Y. 1979).

833 F.2d 894, 897 (10th Cir. 1987).

### B.     Mr. Cameron's Financial Ability

If it is accurate, Mr. Cameron's financial affidavit is sufficient to sustain his burden that he is entitled to appointment of counsel. The Government's contention is that it is not accurate. The Government asserts that Mr. Cameron may have a continuing interest in the Hallowell residence and in the Rome property that have not been fully or accurately disclosed. It also questions whether he has an interest in a state pension not revealed in his financial affidavit.

The Court defers ruling for a number of reasons. First, it notes that Mr. Cameron was employed as an Assistant Attorney General for the state of Maine for approximately ten years prior to December 2007, earning a comparatively modest salary. There is no suggestion that Mr. Cameron worked in an area of law that would be especially lucrative, or that his past work history would indicate the accumulation of substantial financial resources. Second, Mr.

Cameron retained and paid his own private attorney for the period from December 2007 to just this month, and during this interval, his former attorney actively pursued his defense. Mr. Cameron's defense to date likely had a significant impact on whatever extra money he had saved. Third, now that his private attorney has been allowed to withdraw, if Mr. Cameron hired his own replacement counsel, the new lawyer would be required to start again, generating substantial billable hours to familiarize himself or herself with the case in order to match the prosecutors' current knowledge. Fourth, to defend a charge of possession of child pornography is a high stakes, time intensive, technical, and intricate matter, and the new attorney faces the prospect of a period of focused dedication, which would translate into high legal fees. Fifth, if the case proceeds to trial, the defense lawyer will be required to spend an inordinate amount of time attempting to match the prosecutorial resources of the Government. Sixth, taking the $125 maximum hourly rate for panel counsel as a proxy, a diligent defense lawyer will in no short time accumulate significant time and expense. Finally, because of the technical nature of a child pornography case, the defense will likely be required to seek out and secure the services of one or more computer expert to review the Government's evidence and suggest possible technical defenses. These experts are expensive. All of this makes it unlikely in the Court's view that even if the allegations of the Government were substantiated, Mr. Cameron could long continue to pay his new defense lawyer with the assets the Government claims he retains. Thus, in reasonably short order, Mr. Cameron could be back before the court asking yet again for newly appointed defense counsel.

The Court is determined to move this criminal case to fruition. Mr. Cameron has lived under a shadow of investigation for an extremely serious crime since December 2007; he has been under indictment for over a year. Criminal cases rarely age well. Witnesses die, become ill

or move away, evidence gets lost, memories fade; all of which is why there is a Speedy Trial Act. The case is currently scheduled for trial in June. If the Court were to grant the Government's request for a hearing, the efforts of the newly-appointed defense lawyer would be diverted to defending the merits of the motion, not the merits of the indictment. This would enhance the likelihood that the resolution of this long-pending criminal matter would be further delayed. Further, an exploration of Mr. Cameron's assets could well involve discovery, controversy, and delay, and would be a serious diversion from the main task of just appointed defense counsel. Further, the resolution of this controversy would present a considerable distraction for Mr. Cameron himself as he assists in his own defense. The prospect of delay and diversion is especially problematic here, since Mr. Cameron's financial situation has been made manifestly more complicated by his recent divorce and the Government's seeming contention that the divorce judgment does not accurately reflect the true state of Mr. Cameron's finances.

This does not mean that the Court has resolved whether Mr. Cameron is financially unable to pay defense counsel. The Guide to Judiciary Policy provides that "[a]ny doubts as to a person's eligibility should be resolved in the person's favor; erroneous determinations of eligibility may be corrected at a later time." *Guide to Judiciary Policy*, Vol. 7, Pt. A, Ch. 2, § 210.40.30(b). The question remains open. If the Defendant is convicted, whether he sequestered assets or misrepresented his financial condition could become an issue at sentencing. *Id.* § 210.40.30(d) (providing that prior to sentencing, the court should consider pertinent information "in order to make a final determination concerning whether the person then has funds available to pay for some or all of the costs of representation" and "should order the person to reimburse the CJA appropriation for such costs"). How the *Barcelon* factors would be applied in Mr. Cameron's case depends on the evidence presented at the time. In any case, if the Government

believes that he committed perjury in signing and swearing to the financial affidavit, it could, if it elected to do so, pursue the matter separately. But, for now, the attention of the parties should be directed to the prosecution and defense of the merits of the pending indictment.

## III. CONCLUSION

The Court DISMISSES without prejudice the Government's Motion for Reconsideration and A Hearing on Order Appointing Counsel (Docket # 120).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 18th day of March, 2010