UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES M. CAMERON | ) | |

**ORDER ON MOTIONS *IN LIMINE* REGARDING EXPERT TESTIMONY**

James Cameron filed two motions *in limine* to limit the testimony of two prospective government expert witnesses.  On July 29, 2010, the Court held oral argument on Mr. Cameron's motions.   Because the proffered expert testimony does not warrant wholesale exclusion and any objections are better resolved at trial, the Court dismisses Mr. Cameron's motions without prejudice.

## I.   STATEMENT OF FACTS

On February 11, 2009, a federal grand jury indicted James M. Cameron, alleging violations of federal criminal prohibitions against the possession and transportation of child pornography.  *Indictment* (Docket # 3).  On July 10, 2010, Mr. Cameron moved *in limine* regarding the testimony of Detective Scot Bradeen. *Def. Mot.* in Limine *Regarding the Scope of the Gov't's Expert Witness Testimony at Trial* (Docket # 139) (*Bradeen Mot.*).  On July 20, 2010, Mr. Cameron moved again *in limine* regarding the testimony of Special Agent Brian Bujdoso.[1]  *Def. Mot.* in Limine *Regarding the Testimony of Prospective Government Expert Witness Brian Bujdoso* (Docket # 147) (*Bujdoso Mot.*).  The Government responded to both motions

---

[1]  Because Mr. Cameron has made similar arguments in these motions, they are discussed together.

on July 26, 2010. *Gov't's Resp. to Def.'s Mot.* in Limine *Regarding Scope of Gov't's Expert Testimony* (Docket # 152) (*Bujdoso Resp.*); *Gov't's Resp. to Def.'s Mot.* in Limine *Regarding Scope of Gov't's Expert Testimony* (Docket # 153) (*Bradeen Resp.*). Mr. Cameron replied on July 28, 2010. *Reply to Gov't's Resp. to Defense Mot.* in Limine *Regarding the Scope of Scot Bradeen's Expert Testimony* (Docket # 154) (*Bradeen Reply*); *Reply to Government's Resp. to Defense Mot.* in Limine *Regarding the Scope of Brain Bujdoso's Expert Testimony* (Docket # 156) (*Bujdoso's Reply*).

## II.   DISCUSSION

In both motions, Mr. Cameron argues that in this case

> there is the potential for unconventional expert witness testimony to bootstrap a heavily circumstantial prosecution case with inferences about the defendant's mindset (i.e., whether he acted knowingly, voluntarily and intentionally in the absence of accident or mistake). Fed. R. Evid. 704(b) (prohibiting expert opinions or inferences about whether a defendant possessed a mental state constituting an element of the crime). It is for the trier of fact and not an expert witness, to determine whether a defendant committed an act with the state of mind that renders that conduct criminal. Where there is a challenge to the admissibility of expert testimony, a trial court may approve some, but not all aspects of the proposed evidence.

*Bradeen Mot.* at 7; *Bujdoso Mot.* at 3.

### A.   Detective Bradeen

Detective Scot Bradeen is "a certified computer forensic examiner employed by the Lewiston Police Department and assigned to the Maine Computer Crimes Task Force." *Bradeen Resp.*, Attach. B, *Notice of Intent to Call Expert Witness* at 1. (*Bradeen Notice of Intent*). He has worked as a forensic examiner since 2002, performing between 60 and 100 forensic examinations per year. *Bradeen Resp.* at 3-

4.   He has received hundreds of hours of technical training on topics relating to computer forensics, and he teaches computer forensics at the Diplomatic Security Service, a division of the U.S. Department of State.  He has qualified as an expert witness on computer forensics in Maine state courts and in the federal court in the District of Maine.  *Bradeen Resp.* at 4.   Det. Bradeen performed a forensic examination of the computers seized from Mr. Cameron's residence and office and is expected to testify as to the results of those examinations.  *Id.*; *Bradeen Notice of Intent* at 1.

Mr. Cameron asserts that Detective Bradeen is a "quasi-expert witness." *Bradeen Mot.* at 12.[2]  He is a "percipient witness who used a software application as a tool when searching for electronic contraband."  *Id.*  The admissible portion of his testimony "would concern what, where and how he found the terms of digital evidence," as well as an "expla[nation] [of] relevant computer technology concepts and terminology, or perhaps his personal experience with the functioning of the Yahoo! and Google Hello services implicated by the circumstances."  *Id.*  Mr. Cameron requests that Detective Bradeen's testimony be restricted to three areas:

> (1) an appropriate foundation description of his qualifications, (2) an explanation of what, where, when and how he found the alleged contraband that is the subject matter of the indictment, and (3) an appropriate explanation of the computer technology concepts and terminology associate with his vicarious examinations of the computers.

*Id.* at 14.  Without such restrictions, Mr. Cameron fears that Detective Bradeen

> will opine about, among other things: (1) characteristic patterns of consumers and distributors of child pornography, (2) typical

---

[2] Mr. Cameron also calls Detective Bradeen an "unconventional expert witness."  *Bradeen Mot.* at 7.

3

nomenclature practices followed by consumers and distributors of child pornography when establishing Web sites, list-servers, email addresses and other online services, (3) the specific prurient interests of individuals who patronize particular online services, (4) the incriminating purpose of utilizing otherwise legitimate software applications or online practices when using the prism of a child pornography detective, and (5) the "forensic relevance" or "forensic significance" of his observations and findings in this case.

*Bradeen Mot*. at 12.  Mr. Cameron argues that these five categories of opinions while helpful for a probable cause determination "have no evidentiary value at a proceeding on whether the government is able to prove beyond a reasonable doubt that Mr. Cameron knowingly possessed, received or transmitted child pornography." *Id*. at 13.  Mr. Cameron specifically requests that the Court exclude testimony by Detective Bradeen and any other government witness concerning these five areas. *Bradeen Mot*. at 14.

In response, the Government states that it does not intend to elicit testimony from Detective Bradeen regarding the first and third categories—that is, Detective Bradeen will not be testifying as to "any profiling type information about consumers or distributors of child pornography" or to the "specific prurient interests of individuals who patronize particular online services." *Bradeen Resp*. at 5, 7.

With regard to the second category, the typical nomenclature practices followed by consumers and distributors of child pornography, the Government intends to ask Detective Bradeen "to describe for the Court observations he has made, in the years he has worked on child pornography cases, about how child pornography images and child pornography websites are frequently named." *Id*. at 5.  The Government asserts that it "will *not* be asking Detective Bradeen to offer his

4

opinion on whether specific references to theses terms in this case did or did not connote the presence of child pornography, or what the intent of the people using the names might have been." *Id*. at 6. "He will simply testify based on years of personal observation and industry standards that such terms are regularly used to name child pornography images and websites and are often used in the screen names of people who are interested in this type of material." *Id*. at 6-7.

With regard to the fourth category, the incriminating purpose of otherwise legitimate software applications, the Government states that it "does not intend to ask Detective Bradeen whether the very use of certain programs or Internet services connotes an interest in illegal content." *Id*. at 7. It is expected that Detective Bradeen "will acknowledge that some of the programs used to transmit child pornography in this case can be, and regularly are, used for legal purposes." *Id*. at 7.

As for the fifth and final category of testimony, testimony on the forensic relevance or forensic significance of Detective Bradeen's findings in this case, the Government states that Detective Bradeen "will not be asked for his opinion on any ultimate issues, such as whether a given image is child pornography, whether his findings reveal that [the] Defendant knew the images he was receiving were child pornography, or Defendant's intent when he saved the images to his My Pictures folder." *Id*. at 8. Rather Detective Bradeen will testify about such things as "path" information. *Id*. at 7. Not only will he "describe generally what path information is and how it reveals the precise location on the computer where a file was stored," but

5

he will "explain to the Court everything he can tell forensically from the path information." *Id.*

Mr. Cameron's main concern seems to be that in order to supply an inference that Mr. Cameron is guilty as charged, Detective Bradeen will testify in *ispe dixit* fashion about the modus operandi of a typical child pornographer. *Bradeen Mot.* at 11, *Bradeen Reply* at 2. To begin, the Court takes the Government at its word regarding the areas of testimony it will not seek to elicit, and at trial, the Court will hold the Government to its representations. As for the second, fourth and fifth categories, the Court concludes that what the Government intends to present is relevant testimony that would assist the Court to understand the evidence or to determine a fact in issue. Fed. Rule Evid. 702. The Government has made assurances that Detective Bradeen will not be asked to testify about the ultimate issue in this case, whether Mr. Cameron knowingly possessed, received or transmitted child pornography. With this representation, Detective Bradeen's proffered testimony will not offend Rule 704.

Further to allay Mr. Cameron's concerns, because he has waived jury trial and is proceeding jury-waived, the risk of unfair prejudice has been lessened.[3] *See*

---

[3] Mr. Cameron cited a recent decision by Judge Hornby, *United States v. Raymond*, CRIMINAL NO. 09-144-P-H, 2010 U.S. Dist. LEXIS 32977 (D. Me. Apr. 2, 2010). *Bradeen Mot.* at 11, *Bradeen Reply* at 2. While *Raymond* is helpful in illustrating what testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue" and what testimony is reliable as required by Federal Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993), the testimony the Government was seeking to introduce in *Raymond* is different from the testimony the Government seeks to introduce through Detective Bradeen. In *Raymond*, the defendant was indicted on two counts of transporting a minor across state lines with the intent of engaging in illegal sexual activity in violation of 18 U.S.C. § 2423(a). *Raymond*, 2010 U.S. Dist. LEXIS 32977, at *2. The Government sought to introduce the testimony of Kenneth V. Lanning, a thirty-year veteran of the FBI, who would "testify, first, about child molesters' behavioral patterns and the 'grooming or

6

*Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Unit A Jan. Cir. 1981) (stating that in a bench trial "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences, and then balance those improprieties against probative value and necessity."). A trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis. *Id.* (stating "[c]ertainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision"); *see also BIC Corp. v. Far Eastern Source Corp.*, 23 Fed. Appx. 36, 39 (2nd Cir. 2001) (citing case); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 497 (D. Del. 2005) (same).

---

seduction process' that molesters use to gain access to victims, and second, about certain characteristics of 'complaint child victims.'" *Id.* at *3. The Court excluded this portion of Mr. Lanning's testimony in part because of the effect the testimony might have on the jury. *Id.* at *20-25. Judge Hornby reasoned that

> Lanning's testimony about behavioral patterns or characteristics of child molesters, if used to suggest the defendant's intent in the case, not only fails the reliability test, but also carries the severe risk of unfair prejudice under Rule 403. Lanning himself may be careful in how he uses his opinions and profiles, and he may try to educate law enforcement investigators to proceed with care, but a jury may make the quick and unjustified jump from his expert testimony about behavioral patterns to guilt in a particular case that shows similar patterns. It is true that jurors regularly are counseled to use their common sense, but introducing the Lanning testimony to a jury invites a toxic mixture of purported expertise and common sense. As the First Circuit has recognized for different expert testimony, "[b]y appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged." *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994) (citation omitted).

*Id.* at *24-25. Unlike the defendant in *Raymond*, Mr. Cameron has not argued that Detective Bradeen's testimony is unreliable. Rather, he is arguing that the testimony does not "fit" the relevant circumstances. *Bradeen Mot.* at 3. As regards the fit of Detective Bradeen's testimony, the Government has already given assurances that it will not question Detective Bradeen on the profile of a child pornographer, a representation that is readily enforceable. Finally, because this case is being tried as a bench trial, one of the primary reasons for Judge Hornby's exclusion of Mr. Lanning's testimony—that the jury would jump to conclusions—is a concern not present here.

Having reviewed the Government's notice of intent and its response to Mr. Cameron's motion, the Court concludes that Detective Bradeen may testify as a computer forensic expert in the area of child pornography to those matters set forth in the Government's Notice of Intent.[4]  At trial, Mr. Cameron is free to object if he contends the Government's questioning has veered into objectionable territory, and the Court will be presented with a more concrete context to make its ruling.

## B.    Special Agent Bujdoso

Brain Bujdoso is a Special Agent with the Office of Investigations, Immigration and Customs Enforcement in Seattle specializing in child exploitation crimes, a position he has held since 2002. *Bujdoso Resp*. at 2.  He has studied the Google Hello program and has "developed a procedure for recovering logs of chat between Hello users." *Id*.  Special Agent Bujdoso has engaged in undercover child pornography investigations using Google Hello, has taught numerous courses on Google Hello, and has testified three times as a witness on Google Hello. *Id*.

Special Agent Bujdoso is expected to testify as an expert on Google Hello.[5] *Bujdoso Mot*. at 2.  According to the Government, Special Agent Bujdoso will "explain how Google Hello operated; how the user created an account and set options; how the user identified and accepted "friends;" how chat occurred; how images were traded and saved; how the chat and images were displayed during chat

---

[4] The Court also concludes that Detective Bradeen's prospective testimony is unlikely to violate Federal Rules of Evidence 402, 403, and 404(a).   The testimony is relevant, does not present the danger of unfair prejudice, and is not character evidence of the accused.  Fed. R. Evid. 402, 403, 404(a).

[5] Google Hello no longer exists, and according to the Government, no Google Hello employee is available to testify about the software. *Bujdoso Mot*. at 2.

sessions; and how the chat logs and the images were available for later access and use by the user." *Id*. Mr. Cameron is concerned that Special Agent Bujdoso's testimony may stray into two areas:

> (1) [H]is forensic expertise and experience as applied to this matter in the absence of his examination of the relevant seized computer(s), which the government may offer to directly or vicariously bolster the prospective expert testimony of Mr. Bradeen; and, (2) his investigative expertise and experience in 'infiltrat[ing] groups of child pornography collectors who used [Google] Hello as their mode of communication," which the government may rely upon to demonstrate arguendo that Mr. Cameron allegedly followed the modus operandi or evidence propensities identical to typical child pornography collectors and/or individuals previously investigated.

*Id*. at 4. Mr. Cameron asks the Court to restrict Mr. Bujdoso's testimony to "his personal experience with the Google Hello user interface, but only to the extent that the government establishes the proper evidentiary foundation." *Id*. He requests that the Government be foreclosed from "eliciting testimony by Mr. Bujdoso concerning the forensic aspects of the Google Hello software application, including because such testimony would be irrelevant, speculative and otherwise confusing in the absence of his personal examination of the computer(s) seized from the Cameron household;" and that the Government be foreclosed from "eliciting testimony that in any way relates to the modus operandi of child pornography collectors, the propensities of child pornography collectors and/or any correlation of factors in this case with his undercover experience including his playing the role of child pornography collector." *Id*. at 4-5. If such relief is not granted, Mr. Cameron requests that the Court continue the trial "for a minimum of 30 days so that Mr. Cameron may obtain further disclosures from the government concerning the bases

of Mr. Bujdoso's expert testimony and utilize defense expert resources to prepare for his cross-examination.[6]  *Id.* at 5.

The Government responds that Special Agent Bujdoso "has not examined the evidence revealed by the forensic evaluation of Defendant's computers.  He will not be asked on direct to offer opinions on the evidence recovered in this case, on Defendant's mental state, or on whether any of the images recovered constitute child pornography.  He will not be asked to provide profile information about how Google was or was not used to traffic in child pornography.  To the extent that he refers at all to his use of Google Hello during a child pornography investigation, it will be exclusively to lay a foundation for his familiarity with the program and for his ability to testify about its operation." *Bujdoso Resp.* at 3.

The Court concludes that it will be better able to address Mr. Cameron's arguments at trial in an evidentiary context and with question-specific objections, illuminated by "the adversary process" of "competing expert testimony and active cross-examination." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).  Accordingly, the Court DISMISSES without prejudice Defendant's Motion in Limine to Limit Testimony.

---

[6] To the extent Mr. Cameron seeks a continuance of the bench trial now scheduled to begin on August 16, 2010, the Court DENIES the motion.  A grand jury indicted Mr. Cameron on February 11, 2009.  The charges are manifestly serious and have now been pending for over eighteen months. The Court diligently addressed a series of defense motions in 2009 and after the case first became vulnerable for trial in October 2009, the Court granted a defense motion to continue the case until February 2010.  When the case was reset for February 2010, Mr. Cameron's then counsel moved to withdraw and the Court appointed a new attorney.  On April 8, 2010, to allow new counsel to familiarize himself with the case, the Court set the matter ahead for trial in August 2010.  The Court is willing to accommodate the Defendant up to a point, but these charges must be resolved and the Court is determined to resolve them this month.  The Court is not convinced that the Defendant needs additional time to adequately prepare a defense.

## III.   CONCLUSION

The Court DISMISSES without prejudice Defendant's Motions *in Limine* regarding the scope of the Government's expert witnesses testimony at trial and to the extent the Defendant is seeking a continuance of the scheduled trial, the Court DENIES the motion (Docket # 139 and Docket # 147).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2010

11