UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES M. CAMERON | ) | |

**ORDER ON SECOND MOTION TO SUPPRESS**

James Cameron moves to suppress evidence obtained by Yahoo! during its search of photo albums located on the Yahoo! Network.  The Court rejects the Defendant's contention that in searching for and reporting to the Government that one of its customers was committing a crime against children, Yahoo! acted as an agent of the Government for Fourth Amendment purposes.

**I.      STATEMENT OF FACTS**

   **A.      Procedural History**

On February 11, 2009, a federal grand jury indicted James Cameron for transporting, receiving, and possessing child pornography in violation of 28 U.S.C. §§ 2252A(a)(1), 2252A(a)(2), 2252A(a)(5)(B), and 2256(8)(A).  *Indictment* at 1 (Docket # 3).  The deadline for pretrial motions was set for May 18, 2009.  (Docket # 21).  On May 18, 2009, Mr. Cameron filed his first Motion to Suppress, which the Court denied on September 1, 2009.  *Mot. to Suppress Evidence* (Docket # 27); *Order on Mot. to Suppress* (Docket # 67).  On February 26, 2010, Mr. Cameron's retained counsel moved to withdraw, *Mot. to Withdraw* (Docket # 109); the Court granted the

1

motion and appointed counsel on March 5, 2010.  *Order on Mot. to Withdraw and for Appointment of Counsel* (Docket # 116).

On July 2, 2010, Mr. Cameron through new counsel moved to suppress all direct and derivative evidence obtained by Yahoo!'s search of photo albums located on the Yahoo! Network.  *Second Defense Mot. to Suppress Evidence* (Docket # 138) (*Def.'s Mot. to Supp.*).  The Government responded on July 13, 2010.  *Government's Mem. of Law in Opp'n to Def.'s Second Mot. to Suppress Evidence* (Docket # 141) (*Gov't's Resp.*).  On July 19, 2010, Mr. Cameron replied.  *Defense Reply to the Government's Opp'n to the Second Mot. to Suppress Evidence* (Docket # 144) (*Def.'s Reply*).  The Court held oral argument on July 29, 2010.

### B.    Factual Background

Between about July 2006 and August 2007, pursuant to a mandatory reporting requirement in 18 U.S.C. § 2258A, Yahoo! reported to the CyberTip Line at the National Center for Missing and Exploited Children (NCMEC) that Yahoo! had detected the transmission of child pornography by Yahoo! subscribers to Yahoo! photo albums and briefcases.  *Gov't's Resp.* at 1.  An investigation followed.  *Def.'s Mot. to Supp.* at 5.  Additional information from Yahoo! and Google resulted in the issuance of five search warrants: two state search warrants and three "non-conventional"[1] search warrants.  *Id*. at 5-6.  Maine law enforcement officials

---

[1] Mr. Cameron refers to these search warrants as "non-conventional" because

the government availed itself of the provisions of 18 U.S.C. § 2703(g) (providing that "the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service").

executed the state search warrants and searched Mr. Cameron's office and home computers; unidentified Yahoo! and Google technicians executed the "non-conventional" search warrants of the computer servers. *Id.* Evidence of child pornography was uncovered during the search of these computers and computer servers, and an indictment against Mr. Cameron for the possession, receipt, and transportation of child pornography followed. *Id.*; *Indictment.*

## II. DISCUSSION

### A. Relief from Waiver

The basis for Mr. Cameron's motion to suppress is that

> Yahoo! was acting as a government agent at all relevant times and that all direct and derivative evidence of the warrantless searches and seizures must be suppressed at trial in view of the Fourth Amendment's warrant requirement.

*Def.'s Mot. to Supp.* at 2. The Government responds that because the motion was not filed before the pretrial deadline, Mr. Cameron has waived the right to make the motion. *Gov't's Resp.* at 3. Even if timely, the Government says the motion is "meritless." *Id.* at 3. Mr. Cameron recognizes that his motion is not timely but asks the Court to consider the motion because

> the "late" submission of this motion was prompted by a diligent review of the government's expansive discovery materials in preparation for trial by an attorney who was newly appointed to the matter and uncovered a potentially serious and dispositive Fourth Amendment violation.

---

*Def.'s Mot. to Supp.* at 6 n.10. He continues that "[t]he government has not been relieved of its obligation to follow the usual procedures when introducing the results of a Section 2703(g) search warrant execution into evidence[.]" *Id.*

*Def.'s Reply* at 3.  Mr. Cameron also argues that although he was represented by competent counsel before the pretrial motions deadline, "the issue raised here is only beginning to receive legal attention[.]" *Id.*

Pursuant to Federal Rule of Criminal Procedure 12(c), the Court has the authority to set a deadline for the parties to make pretrial motions, such as motions to suppress.  Fed. R. Crim. P. 12(b), (c).  If a motion is not made before the deadline set by the Court, the motion is deemed waived.  *Id.* 12(e).  The waiver rule is "fundamental to orderly pretrial procedure," *United States v. Nunez*, 19 F.3d 719, 722 (1st Cir. 1994), and "applies broadly."  *United States v. Batista*, 239 F.3d 16, 19 (1st Cir. 2001).  The Court, however, may grant relief from waiver "for good cause." Fed. R. Crim. P. 12(e); *accord Batista*, 239 F.3d at 19 (stating that relief is proper "only where there is a showing of cause and prejudice"); *United States v. Mendoza-Acevedo*, 950 F.2d 1, 3 (1st Cir. 1991).  A showing of good cause can include demonstrating: 1) insufficient time to file a motion; 2) no prior notice of an error, defect, or objectionable action despite due diligence; or 3) ineffective counsel.  *See Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986); *United States v. Grandmont*, 680 F.2d 867, 872-73 (1st Cir. 1982); 24 James Wm. Moore et al., Moore's Federal Practice – Criminal Procedure § 612.06 (3d ed. 2002).

Here, the Court set a May 18, 2009 deadline for pretrial motions.  Mr. Cameron's second motion to suppress was filed well after this deadline on July 2, 2010.  Mr. Cameron does not contend that his retained counsel was incompetent and in fact admits the opposite.  *Def.'s Reply* at 3 ("Mr. Cameron had retained

4

highly competent" and experienced counsel).  Instead, Mr. Cameron contends that there is good cause because "the issue raised here . . . only beg[an] to receive legal attention" after the deadline has passed.  *Id.* (citing *United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010)).

To grant or deny relief of waiver is within the court's discretion.  *United States v. Gomez-Benabe*, No. 92-1254, 1993 U.S. App. LEXIS 1939, at *12 (1st Cir. Feb. 8, 1993) (citing *United States v. Gomez*, 770 F.2d 251, 253 (1st Cir. 1985)).  The charges asserted against Mr. Cameron are serious, and his new counsel has brought to the Court's attention a relevant case decided after Mr. Cameron's retained counsel withdrew.  The Court finds that there is good cause to grant Mr. Cameron relief from waiver.  *See United States v. Roberts*, No. 3:08-CR-175, 2009 U.S. Dist. LEXIS 82090, at *4-5 (E.D. Tenn. Sept. 9, 2009) (recognizing good cause when discovery materials not previously available to the defendants are uncovered).

## B.    The Merits

Mr. Cameron seeks to suppress the direct and derivative evidence uncovered during Yahoo!'s search of photo albums located on the Yahoo! Network.  *Def.'s Mot. to Supp.* at 1.  By enacting 18 U.S.C. § 2258A,[2] Congress imposed a duty on Yahoo!

---

[2] Title 18 U.S.C. § 2258A is entitled "Reporting requirements of electronic communication service provides and remote computing service providers" imposes a duty to report.  Section 2258A(a) provides in part
> (1) In general.  Whoever, while engaged in providing an electronic communication service or a remote computing service to the public through a facility or means of interstate or foreign commerce, obtains actual knowledge of any facts or circumstances described in paragraph (2) shall, as soon as reasonably possible--
> > (A) provide to the CyberTipline of the National Center for Missing and Exploited Children, or any successor to the CyberTipline operated by such center, the mailing address, telephone number, facsimile number, electronic

(and other electronic communication service providers) to report instances of apparent child pornography offenses to NCMEC, a government funded agency that assists in locating missing children.  18 U.S.C. § 2258A(a).  Mr. Cameron argues that Yahoo! is a "private party acting on behalf of the government" and is "subject to the same constitutional restrictions that apply to a law enforcement officer."  *Def.'s Mot. to Supp.* at 3-4, 6-7.  "Accordingly, a Fourth Amendment lens must be used when determining the admissibility of the [evidence] that was 'discovered' as a result of Yahoo!'s warrantless activities."  *Id.* at 8.  Mr. Cameron maintains that Yahoo!'s discovery and seizure of information amounted to a warrantless search and seizure and were therefore unconstitutional.  *Id.* at 8-9.  Additionally, Mr. Cameron argues that "mere acquiescence to some sort of 'consent' granted to Yahoo! in response to a threat of a refusal of service is constitutionally problematic."  *Id.* at 11.  If Mr. Cameron's argument has merit, the Government's case may be in danger because "the viability of the <u>entire</u> indictment depends upon the admissibility of the original images seized by Yahoo! technicians without a warrant and all derivative evidence[.]"  *Id.* at 6.

Though thoroughly researched and well-argued, the Court finds that Mr. Cameron's arguments are without merit because the actions of Yahoo! as a private

---

mail address of, and individual point of contact for, such electronic communication service provider or remote computing service provider; and
(B) make a report of such facts or circumstances to the CyberTipline, or any successor to the CyberTipline operated by such center.
(2) Facts or circumstances.  The facts or circumstances described in this paragraph are any facts or circumstances from which there is an apparent violation of--
(A) section 2251, 2251A, 2252, 2252A, 2252B, or 2260 [18 USCS § 2251, 2251A, 2252, 2252A, 2252B, or 2260] that involves child pornography; or
(B) section 1466A [18 USCS § 1466A].

party do not implicate the Fourth Amendment.  The Fourth Amendment guarantees citizens the right to be free from "unreasonable searches and seizures," U.S. CONST. amend. IV, and but for a few exceptions, warrantless searches and seizures are "*per se* unreasonable." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal quotation marks omitted).  However, "[t]he Supreme Court has 'consistently construed' the Fourth Amendment protection as limiting only governmental action." *United States v. Momoh*, 427 F.3d 137, 140 (1st Cir. 2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  "It is not applicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'"  *Id.* (quoting *Jacobsen*, 466 U.S. at 113-14).

The First Circuit has rejected the adoption of "any specific 'standard' or 'test'" to determine whether a private citizen has acted as a government agent. *United States v. Pervaz*, 118 F.3d 1, 6 (1st Cir. 1997).  Rather, the First Circuit identified three factors as potentially relevant in deciding this question:

> the extent of the government's role in instigating or participating in the search, its intent and the degree of control it exercises over the search and the private party, and the extent to which the private party aims primarily to help the government or to serve its own interests.

*United States v. Silva*, 554 F.3d 13, 18 (1st Cir. 2009) (quoting *Pervaz*, 118 F.3d at 6).  "[W]hether a private entity . . . serves as a mere conduit for the Government in performing a search 'necessarily turns on the degree of the Government's participation in the private party's activities.'"  *Richardson*, 607 F.3d at 364 (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989)).

7

Although the First Circuit has not addressed an argument under 18 U.S.C. § 2258A, under very similar facts, the Fourth Circuit recently held in *Richardson* that AOL did not act as a government agent when it scanned the defendant's email communications without a search warrant, discovered images of child pornography, and reported the discovery to NCMEC in accordance with 42 U.S.C. § 13032.[3]  607 F.3d at 363-64, 367; *see United States v. Tosti*, No. C 09-00973-1 JSW, 2010 U.S. Dist. LEXIS 78307, at *5 (N.D. Cal. Jul. 12, 2010) (quashing defendant's FBI subpoena on the ground that "it is not clear that the requested documents would be relevant to show that the *FBI* knew of and acquiesced in CompUSA's search of *Tosti*'s computer"); *State v. Woldridge*, 958 So. 2d 455, 459 (Fla. Dist. Ct. App. 2007) (stating that "AOL was acting in a manner analogous to that of a citizen informant when it forwarded the information to NCMEC").

The Fourth's Circuit's formulation differs only tonally from the First Circuit's.  Under Fourth Circuit law, the "key factors bearing upon the question of whether a search by a private person constitutes a Government search are (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some independent motivation."  *Richardson*, 607 F.3d at 364 (internal quotation marks and punctuation omitted).  The Fourth Circuit found it significant that "no law

---

[3] 42 U.S.C. § 13032 is no longer in effect.  The reporting requirements of this provision have been amended and are now codified in 18 U.S.C. § 2258A.  *See Richardson*, 607 F.3d at 360 n.1 (Footnote 1 in *Richardson* appears to contain a typographical error, referring to § 2252A, the statute criminalizing the possession of child pornography not to § 2258A, the statute detailing ISP reporting requirements).  Mr. Cameron has not argued that the statutory differences between § 13032 and § 2258A require a different result.

enforcement agency specifically asked AOL to search Richardson's email or provided information to cause AOL to scan his emails.  Neither did law enforcement officials request that AOL aid the investigation of Richardson except through the ordinary forms of compulsory legal process."  *Id.* at 364-65 (internal quotation marks omitted).

The Fourth Circuit rejected the defendant's attempt to analogize the case to *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989) in which a regulatory scheme dictated how railroads conducted breath and urine tests.[4]  In *Skinner*, the Supreme Court concluded that the Government's "encouragement, endorsement, and participation" in railroad employee testing "suffice to implicate the Fourth Amendment."  *Id.* at 615-16.  By contrast, the *Richardson* Court found that "the simple reporting requirement of § 13032" and "regulatory scheme at issue in *Skinner*" were distinct, because AOL was "neither directed [] to actively seek evidence of child pornography in certain circumstances nor prescribed the procedures for doing so[.]"  *Id.* at 366.

Mr. Cameron distinguishes *Richardson* on the following grounds:  1) *Richardson* involved email attachments rather than password-protected online storage spaces; 2) unlike *Richardson*, where no link was made between AOL the Government, an actual link between Yahoo! and the Government is demonstrated

---

[4] The regulations in *Skinner* showed "the Government's intent to actively participate and exert a measure of control over any search under" the regulations because the regulations: 1) preempted state law; 2) superseded any provision of a collective bargaining agreement or arbitration award construing such an agreement; 3) did not permit a private railroad to divest itself of the authority conferred in the regulation; and 4) did not permit employees to decline to submit to drug tests under the conditions set forth.  *Richardson*, 607 F.3d at 366.  As a result, the "'specific features of the regulations combine[d] . . . [so] that the Government did more than adopt a passive position toward the underlying private conduct.'"  *Id.* (quoting *Skinner*, 489 U.S. at 615).

here by Yahoo!'s enrollment in the government funded and managed Technology Coalition; and 3) Yahoo! is immersed in a law enforcement mission as exhibited by its development of a "Compliance Guide for Law Enforcement" for law enforcement audiences. *Def.'s Reply* at 6.

The differences between *Richardson* and this case do not make Yahoo! an agent of the Government for purposes of this case. Critically, the reporting requirement of § 2258A(a)(1) becomes effective when an ISP "obtains actual knowledge of any facts or circumstances" where there is an "apparent violation of" a federal criminal law against sexual exploitation of children. 18 U.S.C. §2258A(a)(1). The law imposes no affirmative duty on Yahoo! to ferret out child pornography and there is no suggestion that Yahoo! acted in concert with law enforcement in performing the searches that led to the discovery of child pornography in this case. The *Pervaz* standards for imputing governmental agency to a private business have not been met. *Pervaz*, 118 F.3d at 6. The Government did not "instigat[e] or participat[e] in the search" or exercise "control . . . over the search and the private party." *Id.*

Mr. Cameron points to Yahoo!'s membership in the "Technology Coalition" and its creating a "Compliance Guide for Law Enforcement" as establishing Yahoo!'s agency relationship to the Government. Admittedly, there is some governmental involvement in the Technology Coalition, including funding, and the Compliance Guide suggests that Yahoo! has elected to cooperate with governmental authorities in the fight against child sexual exploitation. However, Yahoo!'s

membership in the Technology Coalition is voluntary, required neither by the Government nor by § 2258A.

Although Yahoo!'s actions are undoubtedly meant to help the Government discover and investigate child pornography crimes, at the end of the day, Yahoo!'s self-interest and the Government's law enforcement interests coincide; Yahoo! and the Government seek to prevent Yahoo! customers from using its services to commit crimes against children.  Thus, evaluating the last *Pervaz* criterion – "the extent to which the private party aims primarily to help the government or to serve its own interests" – the Court concludes that the mere fact Yahoo! and the Government are united against the sexual exploitation of children does not make Yahoo! an arm of the Government when it looks for and reports customers who may have engaged in the criminal misuse of its services.[5]  *Pervaz*, 118 F.3d at 6.

## III.   CONCLUSION

The Court DENIES Mr. Cameron's Motion to Suppress (Docket # 138).

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> CHIEF UNITED STATES DISTRICT JUDGE

Dated this 10th day of August, 2010

---

[5] Having determined that Yahoo! was not acting as a Government agent, the Court does not reach the standing question the Government raised.  *Gov't's Mem.* at 7-8.