UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-24-B-W |
| | ) | |
| JAMES M. CAMERON | ) | |

**ORDER ON MOTION *IN LIMINE* REGARDING
DOCUMENTARY EVIDENCE**

Claiming the admission at trial of digital images and reports generated by the National Center for Missing and Exploited Children (NCMEC), Yahoo!, and Google would violate the Confrontation Clause of the United States Constitution and Rule 803(6) of the Federal Rules of Evidence, James Cameron moves *in limine* to exclude these exhibits. Based on the submissions of the parties, the Court dismisses Mr. Cameron's motion because it preliminarily concludes that the contested reports and attachments are not inadmissible as business records and their admission as business records would not violate Mr. Cameron's Sixth Amendment rights. Since the Court's ruling is preliminary only and is subject to the evidence the Government presents at trial, the Court dismisses the Defendant's motion without prejudice.

**I.    FACTS**

    **A.    Procedural History**

On February 11, 2009, a federal grand jury indicted James Cameron for transporting, receiving, and possessing child pornography in violation of 28 U.S.C. §§ 2252A(a)(1), 2252A(a)(2), 2252A(a)(5)(B), and 2256(8)(A).  *Indictment* at 1

(Docket # 3).  On July 2, 2010, Mr. Cameron moved *in limine* to exclude from trial digital images and other related material derived from Yahoo!, Google, and the National Center for Missing and Exploited Children (NCMEC).  *Defense Mot.* in Limine *Seeking Exclusion of Digital Images and Related Materials Derived from Yahoo!, Google, and NCMEC Sources* (Docket # 137) (*Def.'s Mot.* in Limine *Doc. Evid.*).  The Government responded on July 13, 2010.  *Government's Mem. of Law in Opp'n to Def.'s Mot.* in Limine *Seeking Exclusion of Digital Images and Related Materials Derived from Yahoo!, Google, and NCMEC Sources* (Docket # 140) (*Gov't's Opp'n* in Limine *Doc. Evid.*).  On July 19, 2010, Mr. Cameron replied.  *Defense Reply to the Government's Opp'n to Exclusion of Digital Images & Related Materials as Trial Evidence* (Docket # 145) (*Def.'s Reply* in Limine *Doc. Evid.*).  The Court held oral argument on July 29, 2010.  (Docket # 151).

> B.   **Factual Background**

Pursuant to a mandatory reporting requirement in 18 U.S.C. § 2258A, Yahoo! made twelve reports to NCMEC that Yahoo! had detected the transmission of child pornography by Yahoo! subscribers to Yahoo! photo albums.  *Def.'s Mot.* in Limine *Doc. Evid.* at 6-7.  An investigation followed.  *Id.* at 7.  NCMEC transmitted a report of its findings with attached digital materials to Maine law enforcement authorities and as a consequence, five search warrants were issued: two state search warrants and three "non-conventional"[1] search warrants.  *Id.* at 5-8.  Maine law enforcement

---

[1] Mr. Cameron refers to these search warrants as "non-conventional" because
  the government availed itself of the provisions of 18 U.S.C. § 2703(g) (providing that "the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of

officials executed the state search warrants and searched Mr. Cameron's office and home computers; unidentified Yahoo! and Google technicians executed the "non-conventional" search warrants of the computer servers. *Id.* at 8-11. Evidence of child pornography was uncovered during the search of these computers and computer servers, and an indictment against Mr. Cameron for the possession, receipt, and transportation of child pornography followed. *Id.* at 4-5; *Indictment*. Mr. Cameron expects that the Government will be unable to produce as witnesses any Yahoo! or Google technicians with personal knowledge about Yahoo! or Google's collection of the digital evidence. *Def.'s Mot.* in Limine *Doc. Evid.* at 7-10.

Mr. Cameron divides the Government's anticipated evidence into two categories based on source.[2] The first and second are what Yahoo! sent to NCMEC when it first reported that it had found illegal pornography on what the Government says is Mr. Cameron's computer and what Yahoo! found when it executed the search warrant executed pursuant to 18 U.S.C. § 2703(g). Turning to the first category, he explains that pursuant to 18 U.S.C. § 2258A, Yahoo! "made 12 reports (including attachments of digital images and video clips found under various 'profiles') to NCMEC." *Id.* at 6-7. He says that the Government is expected "to move for the admission of that digital evidence at trial as purported proof that

---

electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service").

*Def.'s Mot. to Supp.* at 6 n.10 (Docket # 138). He continues that "[t]he government has not been relieved of its obligation to follow the usual procedures when introducing the results of a Section 27-3(g) search warrant execution into evidence[.]" *Id.*

[2] Mr. Cameron actually divides the anticipated evidence into three categories but in his argument he makes a Confrontation Clause argument for the Yahoo! material and an evidentiary argument for the NCMEC material.

Mr. Cameron received and/or transmitted illegal pornography over the internet during an 18-month period spanning the years 2006 and 2007 using various profile aliases." *Id.* at 7. Mr. Cameron then refers to a separate set of Yahoo! evidence: the material Yahoo! technicians compiled in response to a search warrant the Court issued under 18 U.S.C. § 2703(g). Mr. Cameron contends that the Government will seek to introduce these images through the testimony of a Yahoo! technician "who does not have personal knowledge of the electronic evidence seizures." *Id.* at 9. A second source is NCMEC itself, which received the Yahoo! reports of child pornography, evaluated it, and sent a report to state authorities in Maine. *Id.* at 7-8. Mr. Cameron states that the Government will call a NCMEC witness, who will have general knowledge of its procedures but will have no personal knowledge of "the collection of the digital evidence by Yahoo! technicians." *Id.* at 8. Mr. Cameron thus anticipates that the Government will seek to introduce evidence in each of these categories by proffering a foundational witness with general knowledge of Yahoo!'s business practices but no personal knowledge about the nature of the search that led to the discovery of these images.

## II.  DISCUSSION

Mr. Cameron sets forth several arguments for why the digital images and other material from Yahoo!, Google[3], and NCMEC should be excluded from evidence at trial.

---

[3] Regarding Google, Mr. Cameron restates his Yahoo! arguments to explain why the Google material should be excluded. *Def.'s Mot.* in Limine *Doc. Evid.* at 22-23. The Court reaches the same conclusions for Google as for Yahoo!.

4

### A.  Exclusion of Evidence Seized by Yahoo!

### 1.  The Parties' Arguments

Mr. Cameron argues that the contraband images seized by Yahoo! must be excluded because

> [t]he government's mode of introducing incriminating evidence with testimonial qualities by means of a documentary exhibit is constitutionally impermissible because it forecloses an accused individual from exercising his right to confront (cross-examine) his accuser(s) (the technician(s) who found and seized the images on the Yahoo! server(s)) about the circumstances of the contraband seizures that are the essence of his prosecution.

*Def.'s Mot.* in Limine *Doc. Evid.* at 15.  For support, he cites *Melendez-Diaz v. Massachusetts* in which the Supreme Court concluded that a defendant had a Sixth Amendment right to confront state laboratory analysts who had certified that a substance found in his possession was cocaine. 129 S. Ct. 2527, 2542 (2009).  Mr. Cameron compares the Yahoo! technicians in this case to the forensic analysts in *Melendez-Diaz*. *Id.* at 15-16.  Like the absolute right of a defendant "to cross-examine a forensic analyst whose work incriminated the defendant [with] forensic reports created in the 'regular course of business[,]'" Mr. Cameron argues that he has the absolute right to cross-examine the Yahoo! technician(s) who gathered the evidence against him because "[t]here is little reason to believe that confrontation will be useless in testing [an] analyst's honesty, proficiency, and methodology" when there may be a deficiency in judgment or lack of proper training that could be uncovered from cross-examination.  *Id.* (quoting *Melendez-Diaz*, 129 S. Ct. at 2537-38).  Mr. Cameron also argues that

> [t]he government's reliance on 18 U.S.C. § 2703(g) when arranging for Yahoo! technicians to execute search warrants in the absence of a law enforcement officer does not relieve the government from the evidentiary obligation to present testimony regarding the seizure of the materials named in the indictment and to allow cross-examination of such witnesses.

*Def.'s Mot.* in Limine *Doc. Evid.* at 16-17.

The Government responds that the Sixth Amendment Confrontation Clause is not applicable to Yahoo!'s records because, like telephone or bank records, the records are non-testimonial business records. *Gov't's Opp'n* in Limine *Doc. Evid.* at 11-13. Also, the Government argues that "[s]tatements attributable to the defendant in the Yahoo! records and emails are not hearsay" because "[a] party's own statement is directly admissible against him." *Id.* at 14 (citing *United States v. Matlock*, 415 U.S. 164, 172 (1974); Fed. R. Evid. 801(d)(2)(A)).[4]  Finally, the Government asserts that there is no authority to support Mr. Cameron's argument that "a record custodian will not be sufficient to authenticate the evidence received in response to the Section 2703 warrant." *Gov't's Opp'n* in Limine *Doc. Evid.* at 15.

      2.      **Analysis of the Admissibility of Yahoo!'s Records As Business Records**

            a.      **The Confrontation Clause and Rule 803(6)**

---

[4] Federal Rule of Evidence 801(d)(2) states that

> [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

The Confrontation Clause of the Sixth Amendment guarantees an accused in a criminal proceeding the right "to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI; *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *United States v. Alvarez*, 987 F.2d 77, 82 (1st Cir. 1993). Under the Confrontation Clause, an accused has the right to cross-examine adverse witnesses to test "the believability of a witness and the truth of his testimony." *United States v. Carty*, 993 F.2d 1005, 1009 (1st Cir. 1993) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)); *Alvarez*, 987 F.2d at 82 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987)).

The First Circuit recently addressed the status of Confrontation Clause jurisprudence in *United States v. Figueroa-Cartagena*, No. 08-2110, 2010 U.S. App. LEXIS 14619 (1st Cir. Jul. 16, 2010). The First Circuit observed that the Supreme Court decisions in *Crawford v. Washington*[5] and *Davis v. Washington*[6] "define the basic contours of the Confrontation Clause as it applies to out-of-court statements." *Id.* at *39. The *Figueroa-Cartagena* Court stated that "'testimonial' statements may not be admitted as evidence of a defendant's guilt unless the declarant can be cross-examined on the witness stand at trial or, if the declarant is unavailable, the defendant had a prior opportunity for cross-examination." *Id.* "Non-testimonial statements, by contrast, do not cause the declarant to be a 'witness' within the meaning of the Sixth Amendment and thus are not subject to the Confrontation Clause." *Id.* (internal punctuation omitted).

---

[5] 541 U.S. 36 (2004).
[6] 547 U.S. 813 (2006).

Fortunately, in *Crawford*, the Supreme Court resolved the question of whether records that are admissible under Rule 803(6) subject to a Confrontation Clause challenge. The *Crawford* Court stated that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial -- for example, business records . . . ." 541 U.S. at 56. As Chief Justice Rehnquist explained in concurrence:

> To its credit, the Court's analysis of "testimony" excludes at least some hearsay exceptions, such as business records and official records. To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process.

*Id.* at 76 (internal citation omitted). *Melendez-Diaz* does not change this analysis since the Supreme Court based its ruling on its conclusion that there was "little doubt that the documents at issue in this case fall within the 'core class of testimonial statements'. . . ." 129 S. Ct. at 2532. If the records in this case are non-testimonial, under *Crawford* and *Melendez-Diaz* the Confrontation Clause does not come into play.

As illuminated by *Crawford* and the First Circuit, the question becomes whether the Yahoo! records are business records under Federal Rule of Evidence 803(6). In this respect, what would otherwise be a commonplace evidentiary ruling becomes "suffused with constitutional hues." 5 Joseph M. McLaughlin, Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence Second Edition § 802.04[3][b] (2d ed. 2010) (Weinstein). Thus narrowed, the battle line is drawn: Mr. Cameron insists the Yahoo! records are not admissible as business records and the Government maintains they are.

The Court turns to Federal Rule of Evidence 803(6).[7]

### b.     Qualified Witness Under Rule 803(6)

To be admissible under Rule 803(6), the proponent of a business record must meet several requirements.[8]  Mr. Cameron, however, has focused on the requirement that the Government must authenticate the record "by the testimony of the custodian or other qualified witness." Fed. R. Evid. 803(6).  The failure of the proponent to satisfy this requirement can lead to exclusion.  *Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir. 1992).

Mr. Cameron strenuously contends that the Government will not call as a foundational witness any of the technicians who actually performed the Yahoo! search of Mr. Cameron's Yahoo! account.  Instead, the Yahoo! witness will be someone familiar with how Yahoo! goes about such searches, but not someone familiar with how Yahoo! went about this one.  *Def.'s Mot.* in Limine *Doc. Evid.* at 13-14 (stating that the Government will not call the technicians "to testify about

---

[7] Federal Rule of Evidence 803(6), titled "Records of Regularly Conducted Activity," states in part that
> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

[8] In *United States v. Moore*, the First Circuit described the requirements for laying a proper foundation for a business record: a witness must testify that the records were "(1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy."  923 F.2d 910, 914-15 (1st Cir. 1991) (internal quotation marks omitted).

how, when and where each of the images was found, collected and preserved for litigation").

The Government responds that its Yahoo! records witness "will establish that the Yahoo! records were kept in the course of a regularly conducted business." *Gov't's Opp'n* in Limine *Doc. Evid.* at 14. It says the witness will testify that pursuant to a warrant, Yahoo! produced "among other evidence, electronically stored emails, address books, friends lists, and images and filenames that were associated with the uploads" for certain screen names. *Id.* The witness will confirm that "when executing the warrants, Yahoo! technicians retrieved all of the information associated with these screen names and that they did not selectively choose or review the contents of the named accounts." *Id.*

At this point, the Court cannot make a final determination but it readily concludes that the proffered foundational testimony of the Government's qualified expert is sufficient to survive pretrial attack. A key inquiry under Rule 803(6) is whether the "the source of the information or the circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6). The First Circuit has ruled that "it is well established that the [qualified] witness need not be the person who actually prepared the record." *Wallace Motor Sales, Inc. v. Am. Motor Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985). Here, the Government need not call each of the technicians who did the search so long as it presents a witness who "can explain and be cross-examined concerning the manner in which the records are made and kept." *Id.* Similarly, in *Wallace Motor*, the First Circuit concluded that the

10

president and sole stockholder of a company was a qualified witness although the records were created under his supervision, *id.*, and in *United States v. McGill*, the Circuit Court found that the assistant supervisor of a bank's coupon collection department was a qualified witness. 953 F.2d 10, 12 (1st Cir. 1992). It remains to be seen what testimony the Government adduces at trial and how well the Yahoo! witness withstands cross-examination but the Government has withstood this initial challenge.

          **c.**    **The Confrontation Clause and the Yahoo! Records**

Nor is the Court convinced that Mr. Cameron's argument against the admissibility of the Yahoo! records truly implicates the Confrontation Clause. Whether the Government will satisfy the foundational requirements for admission at trial requires a straightforward application of the rules of evidence. If the Yahoo! witness has sufficient knowledge to satisfy the Rule 803(6) requirement of a qualified witness, the Yahoo! records will be admitted; if not, they will not. But the attempt to cloak Mr. Cameron's foundational objection as a Confrontation Clause issue fails.

Mr. Cameron urgently presses the notion that to be deprived of the right to cross-examine the technicians who did the Yahoo! searches for these documents constitutes a violation of the Confrontation Clause. His objection does not, however, go to the admissibility of the records themselves, only the foundation for their admission. In other words, Mr. Cameron does not contend that he should be permitted to cross-examine the people who created the images and writings. Such

11

an objection would necessarily fail because the Supreme Court has concluded that the business records exception does not raise Confrontation Clause issues.

Instead, he contends that he should be allowed to cross-examine the people who searched for the Yahoo! records. Here, he faces Rule 803(6) requirements, not Confrontational Clause issues. Generally, the courts have broadly interpreted Rule 803(6)'s "qualified witness" requirement, Weinstein § 803.08[8][a], and the Government is confident it can fulfill its foundational obligations through the Yahoo! witness. If the Government fails to sustain its burden, the penalty is self-executing: exclusion – not because of the Confrontation Clause of the United States Constitution, but because of the foundational requirements of the rules of evidence. The Confrontation Clause could be implicated in a business record issue, but not in the facts as developed so far in this case.

### B. Business Records Pursuant to Federal Rule of Evidence 803(6)'s Authentication Prerequisites

In an argument similar to the one made about the Yahoo! reports, Mr. Cameron argues that the contraband images attached to the NCMEC reports should be excluded from evidence at trial because

> the government cannot meet the foundational requirements of Fed. R. Evid. 803(6)[9] because it cannot present a witness "with knowledge" to authenticate the NCMEC reports and attached images. Indeed, the NCMEC reports themselves specifically advise that the agency cannot vouch for the accuracy of the information reported to it.

---

[9] Federal Rule of Evidence 803(6) is applicable to NCMEC because it is a "private non-profit organization which receives funding from the United States Government and is not a law enforcement agency." *United States v. Diyn*, No. 3:2006-37, 2008 U.S. Dist. LEXIS 54910, *2 n.1 (W.D. Pa. July 18, 2008); *accord United States v. Paroline*, 672 F. Supp. 2d 781, 786-87 (E.D. Tex. 2009); *United States v. Baker*, 672 F. Supp. 2d 771, 774 (E.D. Tex. 2009); *Wojcik v. Wojcik*, 959 F. Supp. 413, 415 (E.D. Mich. 1997).

*Def.'s Mot.* in Limine *Doc. Evid.* at 18.

The Government responds that the NCMEC reports and attached images are admissible as business records that only require a record custodian or otherwise qualified witness to authenticate. *Gov't's Opp'n* in Limine *Doc. Evid.* at 16. Like the Yahoo! records, the Government maintains that the NCMEC reports and attachments are non-testimonial. *Id.* The Government's use of the NCMEC records is to "establish the chain of custody of the evidence . . . from Yahoo! to the NCMEC to the Main State Police Computer Crimes Unit." *Id.* at 16. A record custodian or other qualified witness is sufficient to authenticate the records because "[i]ndividuals whose testimony is relevant in establishing a chain of custody do not need to appear as witnesses." *Id.* (citing *Melendez-Diaz*, 129 S. Ct. at 2532 n.1). Moreover, the Government argues that "Rule 803(6) does not require the business which has custody of the records to be the business which created the records. *Id.* (citing *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992)).

Mr. Cameron's argument on the inadmissibility of the NCMEC reports and its attachments at trial fails for the same reasons his argument on the inadmissibility of the Yahoo! records failed. As non-testimonial hearsay, the NCMEC records and attachments may properly be admitted under Rule 803(6) because they were "(1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy. *Moore*, 923 F.2d at 914-15 (internal quotation marks omitted).

### C. Law Enforcement and/or Evaluative Purposes of the Reports under Federal Rule of Evidence 803(8)

Mr. Cameron also argues that the NCMEC reports should be excluded at trial because the reports "were specifically created pursuant to 18 U.S.C. § 2258A, for 'law enforcement' and/or 'evaluative' purposes," and therefore are inadmissible under Federal Rule of Evidence 803(8)(B).[10] *Def.'s Mot* in Limine *Doc. Evid.* at 20-21. He cites *Melendez-Diaz*, 129 S. Ct. at 2538, and *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943), to support this argument. *Id.* at 20-21. By the same token, Mr. Cameron argues that the NCMEC reports should be excluded as "'evaluative reports' of the sort that are inadmissible in a criminal case under the provisions of Federal Rule of Evidence 803(8)(C)" because "the reports were created . . . for law enforcement and prosecution purposes, specifically as a medium to introduce evidence in a judicial proceeding[.]" *Id.* at 21.

The Government responds that

> [t]he NCMEC Reports were not prepared for the purposes of litigation. Unlike the witness statement at issue in Palmer, the information contained in the NCMEC reports existed prior to any litigation. That the information might be later useful at a trial does not mean that it was prepared for the purposes of litigation.

*Gov't's Opp'n* in Limine *Doc. Evid.* at 16. Also, like the booking sheet at issue in *United States v. Dowdell*, 595 F.3d 50, 72 (1st Cir. 2010), or the immigration I-213

---

[10] Federal Rule of Evidence 803(8) states that
> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Form at issue in *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010), "the NCMEC Report contains routine information prepared in a non-adversarial setting" that is admissible even if the records have "an incidental or secondary use in furthering a prosecution." *Gov't's Opp'n* in Limine *Doc. Evid.* at 17.

Mr. Cameron's argument to exclude the NCMEC reports from evidence at trial on the grounds that they violate Rule 803(8) is without merit. He is correct that pursuant to Federal Rule of Evidence 803(8), "police reports [generally] may not be admitted when offered by the government in a prosecution against the defendant." *United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009) (citing *United States v. Oates*, 560 F.2d 45, 77 (2d Cir. 1977) (discussing the intent of the Federal Rules of Evidence "to render law enforcement reports and evaluative reports inadmissible against defendants in criminal cases")); Fed. R. Evid. 803(8). However, Rule 803(8) does not apply to the NCMEC reports because the NCMEC is a private organization. *See* footnote 9 above.

Even if the NCMEC reports are considered reports compiled by law enforcement personnel, they are still admissible because they were compiled for non-adversarial purposes. The Eighth Circuit found that "reports not containing matters observed by officers in an adversarial setting do not fall within the exclusion to Rule 803(8)(B)." *United States v. Enterline*, 894 F.2d 287, 290 (8th Cir. 1990). In reaching this holding, the *Enterline* Court reasoned that Rule 803(8) did not apply to a computer report because the report

> does not contain contemporaneous observations by police officers at the scene of a crime, and thus presents none of the dangers of unreliability

that such a report presents.  Rather, the report merely contains, and is based on, facts[.]

*Id.*  Like the report in *Enterline*, the NCMEC reports contain computer records and facts, which are forwarded in an unedited condition to local law enforcement agencies.  Accordingly, the NCMEC reports are not "evaluative" and are not inadmissible under Rule 803(8)(B).

### III. CONCLUSION

The Court DISMISSES Mr. Cameron's Motion *in Limine* Seeking Exclusion of Digital Images and Related Materials Derived from Yahoo!, Google, and NCMEC Sources (Docket # 137) without prejudice.[11]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2010

---

[11] The Court notes that Mr. Cameron waived his right to jury trial and the case is scheduled to proceed jury waived on August 16, 2010.  The Court will therefore be required in any event to rule on the admissibility of the contested exhibits, and there is no prospect that a jury will be influenced by references to exhibits that were later determined to be inadmissible.