UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-00024-JAW |
| | ) | |
| JAMES CAMERON | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION OF THE COURT'S DENIAL OF THE DEFENSE
MOTION FOR POST-VERDICT RELEASE**

The Court denies the Defendant's request to reconsider his motion for release pending sentencing, concluding that he has not clearly shown under 18 U.S.C. § 3145(c) that there are exceptional reasons why his detention would not be appropriate.

**I.     STATEMENT OF FACTS**

    **A.     Procedural History**

On August 23, 2010, after a jury-waived trial, the Court found James Cameron guilty of thirteen violations of the federal criminal law against child pornography. *Oral Ct. Verdict* (Docket # 179). Immediately after the verdict, Mr. Cameron moved for release pending sentence and the Court denied the motion. *Oral Mot. for Release Pending Sentencing* (Docket # 184); *Oral Order Denying Mot. for Release Pending Sentence* (Docket # 185). Mr. Cameron now moves for reconsideration. *Mot. for Recons. of the Ct.'s Denial of the Defense Mot. for Post-Verdict Release* (Docket # 206) (*Def.'s Mot.*). The Government opposes release. *Gov't's Opp'n to Def.'s Mot. for Recons. of the Ct.'s Decision Denying Release Pending*

*Sentencing* (Docket # 212) (*Gov't's Opp'n*).  Mr. Cameron has replied.  *Reply to Opp'n to Mot. for Recons. of the Ct.'s Denial of Mot. for Post-Verdict Release* (Docket # 213) (*Def.'s Reply*).

    **B.**    **Mr. Cameron's Argument**

Mr. Cameron moves for "post-verdict release notwithstanding the provisions of 18 U.S.C. § 3143(a)(2)," asserting a "clear showing of exceptional reasons as to why his continued pre-sentencing detention is not appropriate" under 18 U.S.C. § 3145(c).  In support, Mr. Cameron recounts his history from the onset of the investigation, noting that he was granted pre-trial release and "never violated any of the conditions of his bond."  *Def.'s Mot.* at 2.  He observes that, directly after the verdict, he had urged the Court to release him pending sentence on multiple grounds, including 1) the seriousness of a medical condition of an immediate family member; 2) the desperate financial circumstances of the Cameron family; 3) the need to continue sexual counseling; and, 4) the need to treat a newly-diagnosed medical condition.  *Id.* at 3.  Even though these issues had been mentioned on August 23, 2010, Mr. Cameron points to subsequently developed facts that expand each of these considerations.  *Id.* at 4-10.

    **C.**    **The Government's Response**

The Government sees the issue very differently.  It recounts the consequences that these federal charges worked on Mr. Cameron's life.  *Gov't's Opp'n* at 2-3, 8.  Responding to the question of Mr. Cameron's family concerns, the Government observes that, since the execution of the search warrant, Mr. Cameron has been, for the most part, removed from his family.  *Id.* at 2, 8.  It notes that when he was

2

granted pretrial release, he did not return home, but instead went to live with his brother in Michigan where he had relocated after the execution of the search warrant. *Id.* at 2. Further, it represents that on December 28, 2009, Mr. Cameron filed for divorce and on February 25, 2010, the divorce judgment became final. *Id.* at 2-3.

The Government paints Mr. Cameron's word as unreliable. It says that on February 12, 2010, when Mr. Cameron moved to modify his conditions of release, he "represent[ed] that he desired to 'reside with his wife and two children in Hallowell, Maine.'" *Id.* at 2 (quoting *Def.'s Mot. to Modify Conditions of Release* at 1 (Docket # 103)). In fact, the Government notes, he was just about to be divorced, and yet at his suggestion, his ex-wife-to-be was named as his "third party custodian." *Id.* (quoting *Minute Entry* (Docket # 106)); *Order Granting Mot. to Modify Conditions of Release* (Docket # 105) (ordering that Barbara Cameron "assume the role of third party custodian"). Furthermore, the Government points to the severe sentence that Mr. Cameron potentially faces, and says that Ms. Cameron will no longer serve as third party custodian. *Id.* at 3-4. The Government objects to Mr. Cameron being "released to reside by himself at an undisclosed location without a third party custodian." *Id.* at 4. Finally, the Government reviews the case law and concludes that courts elsewhere have ruled against similar motions. *Id.* at 4-7.

### D.    Mr. Cameron's Reply

In reply, Mr. Cameron stresses that he is not a risk of flight or a danger to the community. *Def.'s Reply* at 1-3. He notes that ever since the investigation began, he has been aware that he potentially faced a long period of incarceration

and yet he continually appeared as required. *Id.* at 1-2. Further, he contends that, although child pornography crimes are serious, they are not, in his view, crimes of violence. *Id.* at 2. In short, he contends that there are "exceptional reasons" why his detention would be inappropriate and posits that he raised "substantial and viable questions of law . . . which will require disposition by the Court of Appeals." *Id.* at 3. Mr. Cameron urges the Court to follow the Ninth Circuit's list of non-exclusive factors for a trial court to evaluate in determining whether "exceptional circumstances" exist under § 3145(c) and views a fair assessment of those factors as favoring release. *Id.* at 5-6.

## II. DISCUSSION

Under the Mandatory Detention for Offenders Convicted of Serious Crimes Act, 18 U.S.C. § 3141 *et seq.*, Congress mandated that persons who are convicted of certain crimes must be detained pending the imposition of sentence:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting the imposition or execution of sentence be detained unless - -
>
> > (A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> >
> > (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
> >
> > (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2)(A)-(B) (2006). One category of crimes specified in § 3142(f) is a crime of violence. 18 U.S.C. § 3142(f)(1)(A) (2006). Under 18 U.S.C. § 3156(a)(4),

a "crime of violence" includes "any felony under chapter . . . 110." 18 U.S.C. § 3156(a)(4) (2006). Mr. Cameron's violations of 18 U.S.C. §§ 2252A(a)(1)–(2), 2252A(a)(5)(B), and 2256(8)(A) all fall under Chapter 110, which covers Sexual Exploitation and Other Abuse of Children. Mr. Cameron has therefore been found guilty of crimes of violence within the meaning of this statute, and is subject to mandatory detention under § 3143(a)(2).[1]

Still, Mr. Cameron could be released pending the imposition of sentence if he satisfies the requirement of 18 U.S.C. § 3145(c):

> A person subject to detention pursuant to section 3143(a)(2) . . . and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c) (2006). Under circuit law, this provision has been interpreted to allow a convicted defendant's release even when he has committed a crime that would otherwise mandate detention. *United States v. Weiner*, No. 92-1708. 1992 WL 180697, at *2-3 (1st Cir. July 31, 1992).[2] In *Weiner*, the First Circuit acknowledged that "[n]either the statute nor the legislative history defines the circumstances which may qualify as exceptional reasons permitting release." *Id.* at *3 (internal punctuation and citation omitted). As a general rule, the First Circuit

---

[1] Mr. Cameron does not seek release pending sentencing or appeal under § 3143(a) or (b) and the Court does not consider release under that section.

[2] The First Circuit issued *Weiner* as an unpublished opinion, and its precedential authority is limited. Nevertheless, *Weiner*'s interpretation of § 3145(c) is consistent with circuit authority in eight other circuits. *United States v. Goforth*, 546 F.3d 712, 714-16 (4th Cir. 2008); *United States v. Garcia*, 340 F.3d 1013, 1014 n.1 (9th Cir. 2003); *United States v. Cook*, 42 Fed. Appx. 803, 804 (6th Cir. 2002) (unpublished); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992) (per curiam); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) (per curiam).

has said that there must be present "a unique combination of circumstances giving rise to situations that are out of the ordinary."[3] *Id.* (quoting *DiSomma*, 951 F.2d at 497). The bottom line is that "[t]he absence of statutory criteria makes clear . . . that district courts have wide discretion in deciding whether to invoke this provision." *Id.*

The Court agrees with Mr. Cameron that *United States v. Garcia*, 340 F.3d 1013, 1019-21 (9th Cir. 2003), provides a useful, though not exclusive, set of factors to evaluate when applying § 3145(c). These include:

1) Whether the defendant's conduct was aberrational;

2) Whether the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society if allowed to remain free on bail;

3) The nature of the violent act itself;

4) The length of the prison sentence;

5) Whether prison would impose unusual hardships on a defendant due to illness of injury;

6) The nature of a defendant's arguments on appeal;

---

[3] In *DiSomma*, the Second Circuit cited a letter from Assistant Attorney General Carol T. Crawford to Senator Paul Simon, the sponsor of the provision, describing two situations where the "exceptional reason" standard could be met. *DiSomma*, 951 F.2d at 497. The first involved an elderly man with lifelong community ties who was convicted of the mercy killing of his wife and the second posited a seriously wounded drug dealer whose appeal raised a novel search and seizure issue which could change the outcome of his trial. *Id.* The *DiSomma* Court issued a narrow holding: "We consequently hold that where a defendant mounts a direct and substantial challenge on appeal to the factual underpinnings of the element of violence upon which his sole conviction stands or falls, in the absence of risk of flight or danger to the community, it is well within the district judge's discretion to find that exceptional reasons allow release of the defendant pending appeal." *Id.* at 498.

    7) Whether the defendant is exceptionally unlikely to flee or constitute a danger to the community; and,

    8) Whether the defendant was unusually cooperative with the Government.

*Id.* Turning to the first factor, aberrational conduct, Mr. Cameron's conduct in this case does not fit within the legal concept of aberrant behavior. *See* U.S. SENTENCING GUIDELINES MANUAL § 5K2.20 (2010); *United States v. Bailey*, 377 F. Supp. 2d 268, 269-72 (D. Me. 2005). In fact, the United States Sentencing Commission Guidelines now exclude offenses under Chapter 110 from a downward departure for aberrant behavior under § 5K2.20(a). The Ninth Circuit may have been referencing a more generalized sense of aberrant behavior; however, in the context of this case, this consideration is swallowed by the next factor: past exemplary life.

    It serves no useful purpose for the Court to enter into the parties' debate about whether, but for this offense, Mr. Cameron has led an exemplary life and, if released, would contribute to society. Like most people, Mr. Cameron has been neither all good nor all bad, and the Court has factored into its analysis whether the good things about him compel his post-conviction release. Other than referencing his assistance to his son, Mr. Cameron does not say how his release would allow him to contribute generally to society.

    Regarding the nature of the violent act, Mr. Cameron acknowledges that child pornography offenses are serious but at the same time he minimizes them, saying that his criminal conduct was non-violent. For reasons that should be

7

obvious, Congress has already concluded that the crimes of which Mr. Cameron stands convicted are crimes of violence. *See* 18 U.S.C. § 3156(a)(4). It little credits Mr. Cameron to attempt to quibble the point.

Under initial calculations of the applicable sentencing guideline range, Mr. Cameron is facing a staggering amount of time in prison; the guideline range is 262 to 327 months. The *Garcia* Court says that the length of the sentence "may be a proxy for the seriousness of the crime." 340 F.3d at 1019. Further, if the person is facing only a short time in prison, this factor encourages presentence release because "he will soon be free." *Id.* Finally, the *Garcia* Court observes that if the defendant is likely to serve all or a substantial portion of his sentence while the case is on appeal, this factor would support release. None of these factors runs in Mr. Cameron's favor.

As regards the hardships imposed by illness, Mr. Cameron puts forth his recently diagnosed condition of hypertension. However, high blood pressure is not all that uncommon and the prison system should be able to treat it. In fact, although Mr. Cameron has been incarcerated since late August, he has offered no evidence that his medical condition has been adversely affected. This factor does not assist Mr. Cameron.

Regarding the nature of Mr. Cameron's issues on appeal, given the Court's previous pre- and in-trial review of the issues, it suffices to say that the Court does not conclude that Mr. Cameron's appellate arguments are strong enough to justify post-conviction release. The Court notes that in *United States v. Herrera-Soto*, the

Seventh Circuit observed that to qualify under the "exceptional reasons" standard, it is necessary that the Defendant not simply challenge the "conduct of his trial," but that the asserted error must go to "whether he actually committed a crime of violence." *Herrara-Soto*, 961 F.2d at 647. Although Mr. Cameron's post-verdict motions attack the guilty verdicts, none asserts Mr. Cameron's actual innocence; rather, the motions are directed to whether the Government properly proved Mr. Cameron's guilt.

There is no evidence that Mr. Cameron is likely to flee if he is released and the history of this case strongly suggests otherwise, but Mr. Cameron faces an enormous amount of prison time. Having now been found guilty of the crimes alleged, there is a greater likelihood of serving this time than during his pre-trial release, and his flight potential is elevated. The Court cannot find that Mr. Cameron is exceptionally unlikely to flee.

Regarding danger to the community, the Court is concerned about the circumstances surrounding Mr. Cameron's involvement in this case: the level of his general sophistication, the degree of his computer knowledge, the duration of his illicit conduct, the volume of illicit pornography, the ages of his preferred victims, the content of his emails, the profound and tragic depth of his obsession, and the extraordinary risks he took in order to view illegal images, particularly in light of what he had to lose. Though Mr. Cameron correctly states that there is no evidence of any direct contact with underage children, the Court cannot find that he poses no

9

risk to children—directly or indirectly—if released, and it has not been provided with any evidence to the contrary.

Turning to the final *Garcia* criterion, Mr. Cameron has not been uncooperative, but he cannot be characterized as having been "unusually cooperative" with the Government; he neither pled guilty nor assisted in the capture or prosecution of other individuals suspected of committing similar offenses.

Mr. Cameron's most salient point is that his incarceration is causing stress and trouble in his family. The Court does not doubt that this is correct and is sorry for it. At the same time, a trial judge never sentences just the defendant. Invariably, the imposition of a sentence profoundly affects an entire family and often an entire community. The loss by incarceration of a breadwinner, a spouse, a parent, a child, an employee, a friend and the rippling of this loss into other relatives and into the community are among the most regrettable consequences of crime. Each family is different and Mr. Cameron can make his case for the cascading impact of his incarceration.

Yet, each person who commits a serious crime accepts the risk of conviction and incarceration and the trouble he will visit upon himself, and his family, friends, and community, and if family concerns trumped mandatory detention, exceptions would become the rule. Furthermore, within the range of family consequences, Mr. Cameron has not demonstrated that his are truly exceptional.

On balance, the Court concludes that Mr. Cameron has failed to clearly show "that there are exceptional reasons why his detention would not be appropriate." 18 U.S.C. § 3145(c).

## III.   CONCLUSION

The Court DENIES the Defendant's Motion for Reconsideration of the Court's Denial of the Defense Motion for Post-Verdict Release (Docket # 206).

SO ORDERED.

>                  /s/ John A. Woodcock, Jr.
>                  JOHN A. WOODCOCK, JR.
>                  CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of November, 2010