UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-00024-JAW |
| | ) | |
| JAMES M. CAMERON | ) | |

## ORDER ON POST-TRIAL MOTIONS

James Cameron moves for post-trial relief from verdicts finding him guilty of multiple child pornography offenses, asserting violations of his Sixth Amendment right of confrontation, the erroneous admission into evidence of digital images of child pornography, the failure to suppress the evidentiary results of an illegal warrantless seizure of property, improper venue, lack of jurisdiction, and the improper consideration of expert medical testimony. The Court rejects the Defendant's motions, concluding that the digital evidence was appropriately admitted, that the Internet Service Provider (ISP) was not acting as a Government agent and its actions do not implicate the Fourth Amendment, that venue and jurisdiction were proper, and that the Court correctly found that some of the images were of minor children despite the absence of corroborating expert testimony.

## I.   STATEMENT OF FACTS

### A.   Procedural History

On August 23, 2010, at the close of a six-day, jury-waived trial, the Court found James M. Cameron guilty of thirteen violations of federal criminal law against child pornography. *Oral Ct. Verdict* (Docket # 179). On September 4, 2010, Mr. Cameron moved separately for: (1) a new trial, (2) arrest of judgment as to

Counts 12 and 13, and (3) reconsideration of his motion for acquittal. *Defense Mot. for New Trial* (Docket # 194) (*Def.'s Mot for New Trial*); *Mot. for Arrest of J. as to Counts 12 & 13 on Lack of Jurisdiction Grounds* (Docket # 195) (*Def.'s Jurisdictional Mot.*); *Defense Mot. for Seeking Recon. of Disposition of Mot. for J. of Acquittal* (Docket # 196) (*Def.'s Mot. for Recon.*). On September 15, 2010, the Government filed a consolidated response. *Gov't's Opp'n to Def.'s Post-Trial Mots.* (Docket # 200) (*Gov't's Opp'n*). On September 29, 2010, Mr. Cameron filed a consolidated reply. *Consolidated Reply to the Gov't's Opp'n to Post-Trial Defense Mots.* (Docket # 204) (*Def.'s Reply*).

### B.   The Government Investigation and Evidence of Images of Child Pornography

Before, during and now after trial, Mr. Cameron has vigorously asserted that the images of child pornography that were posted on the Yahoo! servers and which the Government traced to him were inadmissible. Mr. Cameron contends, first, that the images had been illegally seized, and second, that the Government failed to produce a proper authenticating witness.

On March 15, 2007, Yahoo!, an ISP, received customer complaints about the existence of images of child pornography associated with the screen name "lilhottyohh." Yahoo! searched its servers for sites associated with that screen name and reported these images to the National Center for Missing and Exploited Children (NCMEC). In August 2007, after viewing the images, NCMEC referred the matter to the Maine State Police Computer Crimes Unit (MSPCCU), directing MSPCCU to images associated with the "lilhottyohh" screen name as well as to

those associated with a second screen name, "lilhottee00000."  Later, NCMEC made a second referral concerning child pornography that Yahoo! had discovered in the photographs section of an account under the screen name "harddude0000."  Yahoo! records confirmed that these three screen names were traceable to an Internet Protocol (IP) address, which had been assigned to Mr. Cameron's wife at a residence they shared in Hallowell, Maine.

On December 17, 2007, the Maine State Police executed a search warrant at Mr. Cameron's residence and seized four computers.  An analysis of the four computers revealed, among other things, that an eMachines computer at Mr. Cameron's home had been used to access seventeen Yahoo! profiles, including variations of "lilhottee," "harddude," and other screen names.  Based on this and other information, the Government served process on Yahoo!.[1]  In compliance with the subpoena, Yahoo! produced images and discs associated with the identified screen names that contained child pornography.  At trial, the Government sought to introduce these images of child pornography with evidence tying the Defendant to the screen names.

## II.   DISCUSSION

### A.   Sixth Amendment Right to Confrontation

Before and during trial, Mr. Cameron vigorously contended that, before admission of the Yahoo! evidence, he had a constitutional right to confront the Yahoo! employee or employees who located the images of child pornography on the

---

[1] Google and NECMC were also subject to the Government's investigation but for simplicity's sake the Court uses Yahoo! only since Mr. Cameron has raised identical issues with the images on the Google server and similar issues with NECMC.

Yahoo! server.  *Defense Mot.* in Limine *Seeking Exclusion of Digital Images and Related Materials Derived From Yahoo!, Google & NCMEC Sources* (Docket # 137). Before trial, the Court dismissed without prejudice a motion *in limine* premised on Sixth Amendment violations.  *Order on Mot.* in Limine *Regarding Documentary Evidence* (Docket # 172) (*Mot.* in Limine *Order*).  During trial, the Court rejected the same objections and admitted the contested exhibits.  Mr. Cameron now moves for a new trial on similar grounds.

### B.    *United States v. Jackson*

To set the stage for Mr. Cameron's objections, it is necessary to review the Seventh Circuit case of *United States v. Jackson*, 208 F.3d 633 (7th Cir. 2000), which Mr. Cameron cites in support of his motions.  In *Jackson*, the Seventh Circuit addressed whether the contents of Web site postings could be admitted into evidence under the business records exception to the rule against hearsay evidence. *Id.* at 637.  *See also* FED. R. EVID. 803(6).  Noting that the comments on the Web sites were being introduced for their truth and were therefore hearsay, the Seventh Circuit rejected the contention that the website postings were the business records of the ISPs:

> Jackson tries to fit the web postings in as a hearsay exception under Federal Rule of Evidence 803(6) as business records of the supremacy groups' Internet service providers.  Internet service providers, however, are merely conduits.  The Internet service providers did not themselves post what was on Storm Front and the Euro-American Student Union's websites.  Jackson presented no evidence that the Internet service providers even monitored the contents of those web sites.  The fact that the Internet service providers may be able to retrieve information that its customers posted or email that its customers sent does not turn that material into a business record of

> the Internet service provider.  Any evidence procured off the Internet
> is adequate for almost nothing, even under the most liberal
> interpretations of the hearsay exception rules.

*Jackson*, 208 F.3d at 637 (citation and internal punctuation omitted).

The *Jackson* Court went on to state that, even if admissible as business records, the website postings should still have been excluded because they lacked authentication under Rule 901.  *Id.* at 638.  The Court concluded that, to be admissible under Rule 803(6), the business records must be reliable and "business records are inadmissible if the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  *Id.* (quoting *United States v. Croft*, 750 F.2d 1354, 1367 (7th Cir. 1984)).  The Seventh Circuit then affirmed the district court ruling that the postings were inadmissible because, among other things, the movant was "unable to show that these postings were authentic."[2]  *Id.*

Applying *Jackson* to his case, Mr. Cameron contends that the digital images found on the ISP servers are not admissible under Rule 803(6)—the business record exception—and he extrapolates a further point:  that the Confrontation Clause of the Sixth Amendment mandates that he be given the opportunity to cross-examine the persons at the ISPs who located the images and traced them to him.

## C.   *Jackson* and Cameron

---

[2] *Jackson* presented a different issue than presented here.  In *Jackson*, the defendant, an African-American, was involved in a "bizarre and elaborate scheme" that involved sending hate mail to a number of prominent African-Americans.  208 F.3d at 634.  Ms. Jackson's defense was that she did not send the hate mail; it was sent by white supremacists.  *Id.* at 636.  As proof, she sought to admit into evidence postings from white supremacist Web sites that "gloat[ed] about the Jackson case [and took] credit for the mailings."  *Id.* at 637.  The Court concluded that the statements on the websites were "not statements made by declarants testifying at trial, and they were being offered to prove the truth of the matter asserted."  *Id.*  Accordingly, they "were hearsay."  *Id.*  Here, the images challenged by Mr. Cameron were not hearsay.

The brief answer to Mr. Cameron's contentions is that *Jackson* does not apply because the images are not hearsay to begin with and the business records exception does not apply. *Jackson*'s holding, which affected postings—statements—on websites, does not extend to images.

The rule against the admission of hearsay applies to only to statements offered to prove the truth of the matter asserted. FED. R. EVID. 801(c); FED. R. EVID. 802. A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." FED. R. EVID 801(a). However, "[i]n the context of the hearsay rule, photographs do not qualify as assertions." 5-801 JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE SECOND EDITION § 801.10[2] (Lynne Avakian Campbell ed., 2010 ed.) (WEINSTEIN'S); *United States v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980) (stating that "a photograph is not an assertion, oral, written, or nonverbal, as required by Rule 801(a)" and is "admissible as substantive as well as illustrative evidence").

For example, in *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002), the district court admitted printouts from third party websites, noting that "[t]o the extent these images and text are being introduced to show the images and text found on the websites, they are not statements at all—and thus fall outside the ambit of the hearsay rule." *See also Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,* No. 02 C 3293, 2004 U.S. Dist. LEXIS 20845, at *16 (N.D. Ill. Oct. 15, 2004) (quoting *Perfect 10, Inc.*); *United States v. Standring*, No.

1:04-cv-730, 2005 U.S. Dist. LEXIS 41330, at *5 (S.D. Ohio Oct. 19, 2005) (quoting *Perfect 10, Inc.*).

Moreover, in this case, the images were evidence of child pornography under 18 U.S.C. § 2256(8) (defining "child pornography").  Since federal law criminalizes the possession of images that fit within this definition, the images themselves are an element of child pornography crimes and as such are contraband.  Viewed this way, the child pornography images are substantive evidence of the commission of a crime just like a bag of cocaine or a sawed-off shotgun.  Because *Jackson* addressed postings—statements—made on websites, not non-hearsay images of the commission of a crime, Mr. Cameron's reliance on *Jackson* misses the mark.

### D.   Authentication Under Rule 901

The Court's conclusion that the child pornography images are best viewed as non-hearsay, substantive evidence does not make the images automatically admissible; like all such evidence, the proponent must link the contraband to the defendant.  Mr. Cameron has earnestly pressed the contention that the Government failed to make this link.  More specifically, Mr. Cameron has maintained that the Government's authenticating witness failed to satisfy the Government's burden because the witness did not actually perform the search of the Yahoo! server.  *Def.'s Mot for New Trial* at 6-7.

Addressing this burden of authentication, Rule 901(a) requires that the proponent of an exhibit produce evidence "sufficient to support a finding that the

matter in question is what its proponent claims." FED. R. EVID. 901.  In *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994), the First Circuit wrote:

> [T]he burden of authentication does not require the proponent of the evidence rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood.

The burden on the Government, however, is not great.  "In general, the proponent of a proffered exhibit needs only to make a prima facie showing that the exhibit is what the proponent claims it to be." WEINSTEIN'S § 901.02[3].  Thus, in *Holmquist*, the First Circuit observed that "[i]f the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the [factfinder]."  36 F.3d at 167; *see also United States v. Collado*, 957 F.2d 38, 39 (1st Cir. 1992) ("The proponent [of evidence] first must authenticate the evidence by demonstrating to the court that there is a reasonable probability that the evidence is what its proponent claims." (internal quotation marks and citation omitted)).

Here, Christian Lee, a legal assistant in Yahoo!'s legal compliance unit, and Colin Bogart, a legal assistant in Google's legal compliance unit, both testified to their respective familiarity with the records collection processes of Yahoo! and Google, the employees who conducted the collection, and the reliability and accuracy of the servers.  They further testified that the evidence offered by the Government from Yahoo! and Google's servers was the same as that produced by Yahoo! and Google.  Finally, they traced the images on their servers to Mr. Cameron.  The

Court concludes that this testimony satisfied the Rule 901 authenticity requirements as construed by the First Circuit.  Based on the testimony of the authenticating witnesses, the Court concluded that the images contained on the exhibits were what the Government claimed they were and that they were linked to Mr. Cameron.  The images were thus admissible.

### E.      Authentication and the Confrontation Clause

Mr. Cameron has urged the Court to conclude that the admission of images from an ISP server violates his Sixth Amendment right of confrontation.  Despite the Court's conclusion that the images are not hearsay and the business records exception does not apply, it is still worthwhile analyzing Rule 803(6) as if it applies, because it answers Mr. Cameron's contention that the admission of the images violated his Sixth Amendment right of confrontation.

Under Rule 803(6), the proponent of a business record is required to present "the testimony of the custodian or other qualified witness."[3]  FED. R. EVID. 803(6). Rule 803(6) does not require the proponent of a business record to offer the testimony of "the person who actually prepared the record."  *Wallace Motor Sales, Inc. v. Am. Motor Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985); FED. R. EVID. 803(6).  Indeed, the Supreme Court in *Wallace Motor Sales, Inc.*, noted:

> [I]t is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. . . .  [G]aps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility."

---

[3] A proponent may also present a certification that complies with Rule 902(11), but at trial the Government elected to present a custodial witness.

129 S. Ct. at 2532 n.1. (internal quotation marks omitted).  Based on the testimony of Mr. Lee and Mr. Bogart, the Court readily concludes that the images, if they are business records, were properly admitted under Rule 803(6) without the testimony of the actual ISP searchers.

Again addressing Rule 803(6), the Supreme Court has answered Mr. Cameron's Confrontation Clause argument.  In *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539-40 (2009), the Supreme Court distinguished between records created for business purposes and records created for trial purposes.  Quoting *Crawford v. Washington*, 541 U.S. 36, 56 (2004), the *Melendez-Diaz* Court reiterated that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example business records . . . ."  129 S. Ct. at 2539.  The Supreme Court went on to explain that "[b]usiness . . . records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial— they are not testimonial."  *Id.* at 2540.  Whatever else might be said about the images of child pornography in this case, it is beyond argument that they were not created for trial purposes and thus they do not fall within the ambit of the Confrontation Clause.

To admit the images, the Government was required to present a proper authenticating witness under Rule 901 or, if a business record, under Rule 803(6). But this is all that is required under the rules of evidence.  It is not necessary for

the Government to produce the actual ISP searchers in order to comply with the requirements of the Sixth Amendment.  This Court previously concluded and now reaffirms that Mr. Cameron's objections to the admissibility of the ISP records remain evidentiary, not constitutional, and that the Government satisfied the authentication requirements under either Rule.[4]  *Mot.* in Limine *Order* at 11-12.

### F.     Admissibility of the Images as a Business Record or as Admissions

Mr. Cameron's arguments and his invocation of *Jackson* require the Court to consider the rules of evidence in light of the Internet's constant and rapid evolution.  Thus, while the Court remains convinced that the images are best viewed as substantive evidence, there is no clear statement to that effect by the First Circuit and if the First Circuit concludes that the images are subject to exclusion as hearsay, the question will arise whether the images were admissible under other provisions of the rules of evidence.  Accordingly, it seems prudent to consider the images' admission under other evidentiary mechanisms.

### 1.     Admissibility as a Business Record

Turning to Rule 803(6), the Court views Yahoo! and other ISPs as businesses whose product is the construction and maintenance of a sophisticated, net-based, community bulletin board.  The receipt and storage of postings and images by their customers on their servers are thus made in the "course of regularly conducted

---

[4] None of this prevents the defendant from seeking out and calling as witnesses at trial, the people who pulled and collated the record but it does not mean the Government must satisfy the defendant's demand in order to comply with the Sixth Amendment.

business activity" and potentially admissible under Rule 803(6) on that basis.[5]  *See* FED. R. EVID. 803(6); *see Mot.* in Limine *Order.*

The Court acknowledges that if *Jackson*'s skeptical view of the Internet applies, the images would not be admissible under the business records exception. However, in the decade since *Jackson*, the Internet has become more familiar and ubiquitous and its potential significance as a critical source for evidence in some cases has escalated.   A conclusion that all Internet postings are so inherently unreliable that they are never admissible seems unwise.   For example, if a consumer sought to admit a properly authenticated website page from a major retailer in an Unfair Trade Practice Act case, it would seem that the webpage should be as admissible as a printer flyer containing the same evidence.

That time may have altered *Jacksons'* holding is suggested by its reliance on *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999), in which a district court commented: "While some look to the Internet as an innovative vehicle for communication, the Court continues to warily and wearily view it largely as one large catalyst for rumor, innuendo, and misinformation." Although *St. Clair* still accurately describes some parts of the Internet, the on-line

---

[5] It does not follow, as Mr. Cameron has contended, that the posting of child pornography on the ISP's servers means that the ISP is in the child pornography business; any more than a bank is in the check kiting business when a customer misuses its checking facilities.

The Court also rejects Mr. Cameron's analogy of his password protected photo albums on the ISP's servers to a bank's safety deposit box.   Even assuming (without evidence) that a bank's contract with its safety deposit customer would prevent it from entering into its customer's safety deposit box to guard against illegal activity, Mr. Cameron produced no evidence that his use of the Yahoo! or Google servers was conditioned on a similar promise.   To the contrary, Yahoo! and Google have a statutory obligation under 18 U.S.C. § 2258A to report illegal use of their servers to NCMEC, and in keeping with that obligation, the ISPs have in-house procedures to ensure that their customers are not illegally using their services.   Mr. Cameron presented no basis for the conclusion that he had a right to exclude his ISP from monitoring his use of their servers.

world has matured in the eleven years since that Court's observation, and this Court is less inclined to paint all websites with the same broad brush and exclude all Internet postings from the business records exception to the hearsay rule only because they are Web-based.   The truth of anonymous postings on a white supremacist website would be markedly different than, for example, the truth of postings made by a well-established business on its own website.  At the very least, whether the contents of some websites should be subject to admission under Rule 803(6) merits periodic reevaluation.

The more difficult question is the one here, where the contents of the webpage are not being admitted as the business record of the poster but of the ISP. The *Jackson* view that such postings are not the business records of the ISP is attractive since, as the Seventh Circuit pointed out, the ISP did not create the webpages and it is more difficult to apply the presumption of reliability that justifies the admissibility of the records of a regularly conducted business.  But the evidence at trial confirmed that the ISPs are indeed in the business of creating a worldwide poster board and charging customers for access.  The threshold question for the business records exception is whether the postings were in fact posted and for this purpose, the ISP authenticating witnesses in this case explained what was found on their servers.

Simply because the Government established that the images were posted on the ISP server does not make the postings admissible for the truth of what was posted.  The proponent of the admissibility of an anonymous Web posting of a white

supremacist group still face substantial additional hurdles for the posting's admission. First, the proponent must comply with the authentication requirements of Rule 803(6) and, if the "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," the postings would still be inadmissible. *Jackson*, 208 F.3d at 638 (citation omitted). Here, once the ISPs identified the images as coming from their own servers, the Government was required to demonstrate that the images were authentic and relevant. The Government presented a Web-based roadmap that traced the images to Mr. Cameron, and images of child pornography are obviously relevant to a child pornography case. Thus, here, the Government sustained its burden to admit these images under the business records exception, if it applies.

Second, the Court would be required to balance the probative value of the exhibit against its prejudicial impact. FED. R. EVID. 403. Here, the Court engaged in such a balancing test and concluded that the images were not unfairly prejudicial and should be admitted. *See United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008) (admitting images of child pornography over the defendant's Rule 403 objections and noting that "only 'unfair' prejudice is to be avoided, as by design, all evidence is meant to be prejudicial" (internal quotation marks omitted)).

### 2.    Admissibility as an Admission

If the images are potentially "statements" subject to the rule against hearsay, a final means for admission is as admission by a party-opponent under Rule 801(d)(2). Since the possession of these images could constitute an admission by the Defendant of the commission of the crime of possession of child pornography, once

traced to the defendant, they become an admission and not hearsay.  *See* FED. R. EVID. 801(d)(2) (admission by a party-opponent is not hearsay).[6]

## G.    ISP Documents

In addition to the images, the Government introduced into evidence a number of written documents that contain such evidence as emails, electronic receipts, and chain of custody evidence.  These documents fit squarely into the business records exception to the hearsay rule and have been authenticated.  FED. R. EVID. 803(6); FED. R. EVID. 901.   The Court remains satisfied that these documents were properly admitted.

## H.    Yahoo!'s Search and the Government Action

Before, during, and after trial, Mr. Cameron has challenged Yahoo!'s search of its servers as the actions of a Government agent.  The Court previously addressed this issue and the Court again rejects Mr. Cameron's argument for the same reasons.  *See Order on Second Mot. to Suppress* (Docket # 167).  Yahoo! is not an agent of the United States Government and did not act in concert with the Government in securing the evidence.   Mr. Cameron's Fourth Amendment challenges are therefore inapplicable.  *Id.* at 6-11.  *See also United States v. Momoh*, 427 F.3d 137, 140 (1st Cir. 2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

## I.    Expert Medical Testimony

---

[6] This discussion reflects the considerable uncertainty that surrounds how to apply the rules of evidence to Web-based postings.  As the Court has stressed, it remains convinced that these images are admissible as substantive evidence once tied to the defendant and consideration of other potential means for admission should be academic.

Mr. Cameron challenges the Court's guilty verdicts on Counts 7 and 12, arguing that the Government expert's inability to opine that images associated with those Counts depicted minors "compelled a reasonable doubt." *Def.'s Mot for New Trial* at 12. The Court disagrees.

The Government called Lawrence R. Ricci, M.D., as an expert witness to establish that the individuals depicted in the images were less than 18 years old. The Counts in this case concerned different images and Dr. Ricci testified as to his professional opinion regarding each image in each count. For Counts 2, 7, 8 and 12, Dr. Ricci said that he could not confirm that the individuals in the images were less than eighteen years old. The Court acquitted Mr. Cameron on Counts 2 and 8 but found Mr. Cameron guilty on Counts 7 and 12.

Dr. Ricci described the so-called Tanner Staging for evaluating the degree of sexual maturity in an individual. He said that Tanner Staging runs from the Stage I classification of pre-pubertal through the Stage V classification of fully mature. Dr. Ricci explained that pre-pubertal refers to having no evidence of sexual development. At Stage II for girls, there is the beginning of evidence of pubic hair and breast development.[7] At Stages III and IV, this development gradually progresses. Most girls reach Stage II between the ages of ten and fourteen.

When Dr. Ricci viewed the images, he measured them exclusively against Tanner Stage I. If there was no evidence of secondary sexual development and/or the image was of a very young child, he expressed the view that the image was of a pre-pubertal person. If the person had some breast and pubic hair development, he

---

[7] The images in this case were overwhelmingly of females.

was not prepared to say that she was less than eighteen.  Thus, the person in the image could be a Tanner Stage II—with breast and pubic hair development consistent with being between ten and fourteen years old—and Dr. Ricci testified that he would not express the professional opinion that the person was less than eighteen.  Dr. Ricci acknowledged that his classification standard is probably the most conservative he had ever run across.

For Counts 7 and 12, the Court was presented with images of individuals but no confirming expert testimony that the persons depicted were in fact under the age of eighteen.  Other courts have concluded that it is not always necessary for the Government to present expert testimony on the issue of age for a factfinder to find that pornographic images depict a minor.  *See, e.g., United States v. Riccardi*, 405 F.3d 852, 870 (10th Cir. 2005) (stating that although some cases may require expert testimony on the question of age, "this judgment must be made on a case-by-case basis"); *United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999) (stating that the need for expert testimony on the issue of age must be decided on a case by case basis and that "it is sometimes possible for the fact finder to decide the issue of age in a child pornography case without hearing any expert testimony"); *United States v. Gallo*, No. 87-5151, 1988 U.S. App. LEXIS 19550 at *11 (4th Cir. May 12, 1988) ("Expert testimony as to age, while perhaps helpful in some cases, is certainly not required as a matter of course."); *United States v. Villard*, 700 F. Supp. 803, 814 (D.N.J. 1988) (explaining that one way the government can prove a photographed person is a minor is for the jury to "examine the photographs in question and

17

determine for itself whether the individual is under eighteen years of age").  Expert testimony may be necessary when the persons are "close enough to the age of eighteen that a lay person could not reliably tell the difference without expert assistance."  *Riccardi*, 405 F.3d at 870.  However, there will be some cases in which the individuals "are so obviously less than 18 years old that expert testimony is not necessary or helpful to the factfinder."  *Katz*, 178 F.3d at 373; *Villard*, 700 F. Supp. at 814 ("It is conceivable that a lay witness can perceive the clear differences between a child in the earliest years of life and a young adult aged eighteen.  Those differences are also within the common experiences of the jurors and they can evaluate the testimony accordingly.").

Although there is no First Circuit case directly on point, in *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 439 (1st Cir. 2007), the First Circuit reiterated the rule in *United States v. Nolan*, 818 F.2d 1015, 1018-20 (1st Cir. 1987), that the Government is not required to "produce expert testimony in addition to the images themselves, in order to prove beyond a reasonable doubt that the images depicted are of real children."  *See also United States v. Wilder*, 526 F.3d 1, 10-11 (1st Cir. 2008) (reiterating the First Circuit's holding in *Rodriguez-Pacheco*).  Since the First Circuit allows fact finders to determine whether images depict real as opposed to digitally-created children, *Rodriquez-Pacheco*'s logic is readily extended to the more commonsense determination of whether a person in an image is less than eighteen years old.

For each of Counts 2, 7, 8, and 12, the Court viewed the admitted images and took into account Dr. Ricci's expert testimony. It is important to note that Dr. Ricci did not affirmatively testify that the images in Counts 7 and 12 depicted persons who were at least eighteen years old. Instead, Dr. Ricci testified that using a highly conservative test, he could not say that the persons were less than eighteen years old.

The Court carefully considered Dr. Ricci's expert opinions but at the same time, did not consider his testimony to be binding on the Court as factfinder. Viewing the evidence, the Court did not find that the Government had proven beyond a reasonable doubt that the images in Counts 2 and 8 depicted persons less than eighteen years of age. For Counts 7 and 12, however, the Court found that the Government had proven beyond a reasonable doubt that some of the images depicted persons less than eighteen years old. The quality of the images, the absence of characteristics of female development, the apparent youth of the individuals; the visual contrast between eighteen-year-olds and the persons in the images, and Dr. Ricci's highly conservative test for evaluating age, convinced the Court beyond a reasonable doubt that some of the images in Counts 7 and 12 depicted persons substantially less than eighteen years old.

## J.    Venue and Jurisdictional Issues

The Court has twice responded to the jurisdictional and venue challenges that Mr. Cameron again raises in the motions currently before the Court. Mr. Cameron first raised the issues on May 18, 2009, when he moved to dismiss Counts 12 and 13 because he was not in the state of Maine on August 11, 2007—the date

the offenses were alleged to have occurred. *Mot. to Dismiss Counts of the Indictment* (Docket # 28). On September 25, 2009, the Court denied Mr. Cameron's motion. *Order on Mot. to Dis. Counts of the Indictment* (Docket # 81). Then on July 1, 2010, Mr. Cameron again moved for a pretrial ruling on the issue of venue with respect to Counts 12 and 13. *Mr. Cameron's Mot. for a Pretrial Ruling on the Issue of Venue with Respect to Counts 12 and 13* (Docket # 136). On August 9, 2010, the Court denied the motion. *Order on Mot. for Pretrial Ruling on the Issue of Venue* (Docket # 166).

The Court denies Mr. Cameron's motion, essentially for the same reasons it denied the earlier motions. Factually, the Government has correctly set forth the sequence of events:

> [The] transport (Count 12) and receipt (Count 13) offenses began in Maine on June 8, 2007 when the defendant created his lilhottee0000 Google Hello account for the chats. The offenses continued on June 29, 2007 when the aaaaa.mimi and missy218-2 [Child Pornography] images were transported on the Dell laptop from Maine to New York. The offenses continued on August 11, 2007 when lilhottee0000 engaged in the kinkybink chat sending and receiving [Child Pornography] images. The offense continued in Maine when, on about August 15, 2007, the [Child Pornography] images sent and received during the kinkybink chat were transported by the defendant back into Maine. Finally, the offense continue[d] in Maine when, on August 22, 2007, the defendant uploaded the [Child Pornography] images over the internet to his hardude0000 Yahoo! photo album.

*Gov't's Opp'n* at 28. These facts, which are a matter of evidence in the record and which the Court finds to be true, are sufficient to establish that venue was proper in the District of Maine and that this Court had jurisdiction over Mr. Cameron's crimes. 18 U.S.C. §§ 3231, 3237(a); *see United States v. Ramath*, 365 Fed. Appx. 230, 234 (1st Cir. 2010) (concluding in a drug conspiracy case that venue was proper

in Maine since there was sufficient evidence in the record "to show that Maine was where the chain of commerce ended").

Finally, the Court rejects Mr. Cameron's argument that the amount of child pornography—as opposed to adult pornography—linked to Mr. Cameron, compels the conclusion that his receipt and sending of child pornography was unintentional. The Court was presented with overwhelming evidence demonstrating Mr. Cameron's obsession with girls between the ages of ten and fourteen. Based on that evidence, the Court finds that it is beyond a reasonable doubt that his possession, receipt, and transportation of child pornography was knowing and intentional.

### K.    Auto Save Issues

Mr. Cameron argues that, because Yahoo! Messenger and Google Hello had features that would allow the automatic saving (auto-save) of inbound images, the Government failed to establish beyond a reasonable doubt that the child pornography images were intentionally or knowingly possessed, received, or transported. *Def.'s Mot. for New Trial* at 12-13. First, as the Government points out, there is no evidence that any of the images of child pornography were received, saved, or uploaded using an auto-save function. *Gov't's Opp'n* at 31. Second, as the Court has noted, the evidence in this case establishes beyond any reasonable doubt that Mr. Cameron was obsessed with young girls and was determined to view pornographic images of them. Based on numerous email exchanges, Google Hello chats, and other evidence in this case definitively linking the child pornography to Mr. Cameron, the Court is satisfied beyond a reasonable doubt that Mr. Cameron

intentionally possessed, received and transported the pornography.  In short, he got, had, and sent precisely what he sought.

## III.    CONCLUSION

The Court DENIES the Defense Motion for New Trial (Docket # 194), Motion for Arrest of Judgment as to Counts 12 & 13 on Lack of Jurisdiction Grounds (Docket # 195); and Defense Motion for Seeking Reconsideration of Disposition of Motion for Judgment of Acquittal (Docket # 196).[8]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 18th day of January, 2011

---

[8] Mr. Cameron has incorporated by reference the multiple pretrial motions previously made in this case.  *Def.'s Mot. for New Trial* at 1, Ex. A.  Similarly, the Court incorporates by reference each of its prior Orders.