# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JAMES M. CAMERON, | ) |
|         Petitioner, | )   1:09-cr-00024-JAW |
| v. | )   1:17-cv-00275-JAW |
| UNITED STATES OF AMERICA, | ) |
|         Respondent. | ) |

**ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

The Court rejects an inmate's claim that the retroactive application of Amendment 801, a newly adopted child pornography provision of the United States Sentencing Guidelines, to his case would have resulted in a lower guideline calculation and hence a lower sentence. The Court concludes instead that the inmate would have been subject to the same guideline sentence range under either the old or new guideline provisions. For the reasons in the Magistrate Judge's recommended decision and further detailed in this opinion, the Court rejects the inmate's objection and affirms the decision.

## I. BACKGROUND

On July 18, 2017, Petitioner James Cameron filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The United States Magistrate Judge filed with the Court on March 26, 2018 his Recommended Decision. *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 366) (*Recommended Decision*). Mr. Cameron filed his objection to the Recommended Decision on April 16, 2018. *Obj. to*

*Recommended Decision of Magistrate Judge and Req. for District Court De Novo Review* (ECF No. 367) (*Pet'r's Obj.*). The Government filed its response to the objection on April 17, 2018 (ECF No. 368), relying on its previous motion for summary dismissal of the Petitioner's motion to vacate, set aside, or correct sentence and on the contents of the Recommended Decision.[1] *Gov't's Resp. to Pet'r's Obj. to Recommended Decision of Magistrate Judge and Req. for District Court De Novo Review* (ECF No. 364).

In his motion, Mr. Cameron contends he is entitled to a reduction in his sentence because if Amendment 801 were applied to his guideline calculations, he would have been subject to a two-level, not a five-level enhancement for distribution of child pornography and Amendment 801 to the United States Sentencing Guidelines (U.S.S.G.) § 2G2.2(b)(3)(b) is a clarifying amendment to be applied

---

[1] In footnote one of its response, the Government noticed that the Magistrate Judge's Recommended Decision contains a typographical error. At pages four and five of the Recommended Decision, the Magistrate Judge wrote:

> On the charge of criminal contempt, the Court sentenced Petitioner to a term of 24 months in prison, to be served <u>concurrently</u> with the sentence on the child pornography counts, and to be followed by a concurrent six-year term of supervised release.

*Recommended Decision* at 3-4 (emphasis supplied). The Government observed that the Court actually ordered that twenty-four month sentence on the criminal contempt charge in *United States v. Cameron*, 1:13-cr-000001-JAW, be served consecutively to 165 month sentence on the child pornography charges in *United States v. Cameron*, 1:09-cr-00024-JAW-1. The Government is correct. *See J.* (ECF No. 34), *United States v. Cameron*, 1:13-cr-000001-JAW ("The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>24 months, to be served consecutively to the sentence imposed in docket number 1:09-cr-00024-JAW</u>").

The Magistrate Judge correctly noted that the six year term of supervised release on the child pornography and criminal contempt charges are to run concurrently. *Compare J.* at 3, *United States v. Cameron*, 1:13-cr-000001-JAW, *with J.* at 4, *United States v. Cameron*, 1:09-cr-00024-JAW-1.

Other than noting the clerical error in the Magistrate Judge's recommended decision on the consecutive nature of the criminal contempt sentence, the Court is not required to take further action because the judgments in both cases remain unaltered and in force as issued.

retroactively under *Isabel v. United States*, 980 F.2d 60 (1st Cir. 1992).[2] *Pet'r's Mot. to Correct Sentence by a Person in Federal Custody* at 5 (ECF No. 355) (*Pet'r's Mot.*). He urges the Court to revisit his sentence of 165 months, recalculate the proper guideline range, which he says should be 168 to 210 months, reduce the bottom of that range by 70 months and issue a new sentence of 98 months.[3] *Id.* at 7-8.

Over Mr. Cameron's objection, the Court affirms the Magistrate Judge's recommended decision for the reasons set forth in that decision. However, as the Court concludes that Mr. Cameron's motion is based on a flawed premise, namely that he would not have been subject to the five-level increase under the amended version of § 2G2.2(b)(3), the Court explains in some detail why it has reached that conclusion, overruled his objection and affirmed the recommended decision.

A. **James Cameron's March 10, 2011 Sentencing**

When the Court sentenced Mr. Cameron on March 10, 2011 to 192 months of incarceration, the guideline calculation included a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) because he traded images of child pornography. *See Transcript of*

---

[2]     In his Recommended Decision, the Magistrate Judge commented that the Court "is not required to decide whether the amendment is substantive or clarifying," in the absence of First Circuit guidance, because even if the amendment were clarifying, Mr. Cameron's sentence does not meet the 'complete miscarriage of justice' requirement for the Court to have § 2255 jurisdiction. In the intervening period between the Recommended Decision and this order, the First Circuit concluded Amendment 801 is a clarifying amendment in *United States v. Cates*, 897 F.3d 349, 358 n.4 (1st Cir. 2018) and applies to offenses committed before its enactment.
[3]     Mr. Cameron originally asked for a reduced sentence of 81 months. *Pet'r's Mot.* at 7-8. As the Government pointed out in its response, if the new guideline range were 168 to 210 and the Court deducted 70 months from the bottom of that range, the new sentence would be 98, not 81 months. *See Gov't Mot. for Summ. Dismissal of Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255* at 3 n.3 (ECF No. 364). In his reply, Mr. Cameron agreed with the 98 month figure. *Pet'r's Reply to Gov't's Mot. for Summ. Dismissal* at 1 (ECF No. 365).

*Proceedings, Sentencing Proceedings* 11:14-12:4 (ECF No. 263) (*2011 Sentencing Tr.*). The applicable guideline provision read:

> (3) (Apply the greatest) If the offense involved:
> . . .
> (B) Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by five levels.
> . . .
> (F) Distribution other than distribution described in subdivisions (A) through (E), increase by 2 levels.

U.S.S.G. § 2G2.2(b)(3)(B), (F); *see United States v. Rogers*, 666 F. Supp. 2d 148, 150 (D. Me. 2009). Mr. Cameron objected to the five-level enhancement on the ground that the evidence did not reveal that he had "engaged in *quid pro quo* image exchanges." *Mr. Cameron's Mem. in Aid of Sentencing* at 32 (ECF No. 223) (*Def.'s Mem.*). The Court disagreed and applied the five-level enhancement because the trial record "contains sufficient evidence to establish that he bartered images of child pornography for other images of child pornography." *United States v. Cameron*, No. 1:09-cr-00024-JAW, 2011 U.S. Dist. LEXIS 24878, at *20-22 (D. Me. Mar. 11, 2011). Adding all the applicable guideline enhancements, Mr. Cameron's total offense level was 39 and with a criminal history category I, he faced a guideline sentence range of 262 to 327 months of incarceration. *Id.* at *4. On March 11, 2011, the Court imposed a sentence of 192 months of incarceration, seventy months less than the bottom of the guideline sentence range, no fine, ten years of supervised release, no restitution, and a $100 special assessment. *J.* (ECF No. 241). When the First Circuit vacated six counts of conviction, it did not reach any of Mr. Cameron's sentencing challenges. *United States v. Cameron*, 699 F.3d 621, 653 (1st Cir. 2012).

**B.     James Cameron's December 17, 2014 Sentencing Hearing**

On December 17, 2014, Mr. Cameron came before the Court for resentencing. Before his resentencing hearing, Mr. Cameron again objected to the five-level enhancement under § 2G2.2(b)(3)(B) on the ground that he had not engaged in a *quid pro quo* image exchange. *Defense Mem. Addressing Unresolved Guideline Calculation Issues* at 8-10 (ECF No. 329). The Court again rejected Mr. Cameron's objection. *See United States v. Cameron*, No. 1:09-cr-00024-JAW; 1:13-cr-00001-JAW, 2014 U.S. Dist. LEXIS 148418, at *30-35 (D. Me. Oct. 17, 2014) ("In sum, there are no meaningful differences between the exchanges in the upheld counts and the exchanges the Court considered in its 2011 Sentencing Order, and no intervening law mandates a different result. The Court hews to its previous conclusion that the five-level enhancement for distribution for a thing of value under U.S.S.S. § 2G2.2(b)(3)(B) applies to Mr. Cameron").

The Court, however, changed the guideline calculations because the First Circuit had vacated Mr. Cameron's convictions on six counts and, after the Court subtracted the child pornography images associated with those counts, the Court reduced the number of images from between 300 and 600 images consistent with a four-level enhancement under § 2G2.2(b)(7)(C) to between 150 and 300 consistent with a three-level enhancement under § 2G2.2(b)(7)(B). Instead of a total offense level of 39, he would have faced a total offense level of 38.

But because Mr. Cameron fled the District of Maine immediately after the First Circuit issued its 2012 ruling, he faced an obstruction of justice enhancement

5

and his total offense level was recalculated to equal 40, and with a criminal history category I, he faced a guideline sentence range of 292 to 365 months. *United States v. Cameron*, No. 1:09-cr-00024-JAW, 1:13-cr-00001-JAW, 2014 U.S. Dist. LEXIS 148418, at *67 (D. Me. Oct. 17, 2014); *Transcript of Proceedings, Sentencing Proceedings* 65:5-67:4 (ECF No. 348) (*2014 Sentencing Tr.*). At Mr. Cameron's resentencing hearing, the Court reconfirmed that it would not count the images involved in counts that had been vacated and that the Government decided not to prosecute. *Id.* 80:19-22 ("I've determined that I'm not going to hold Mr. Cameron responsible for the acquitted counts, the conduct underlying the acquitted counts").

The Court also addressed the impact of the obstruction of justice enhancement under U.S.S.G. § 3C1.1. In its October 17, 2014 sentencing order, the Court concluded that the guideline calculations properly included a two-level enhancement for obstruction of justice because Mr. Cameron fled while released on bail pending appeal. *Cameron*, 2014 U.S. Dist. LEXIS 148418, at *36-61. Here, the Government elected also to proceed against Mr. Cameron in a separate criminal case for contempt of court. *See United States v. Cameron*, 1:13-cr-00001-JAW. The guideline range for his contempt of court conviction was 18 to 24 months, and the Court imposed a 24 month consecutive sentence on that new conviction. *See J.* (ECF No. 34), *United States v. Cameron*, 1:13-cr-000001-JAW.

Even though the Court could have imposed an obstruction of justice enhancement on the child pornography case and a consecutive sentence on the contempt of court case, it did not include the two-level obstruction of justice

6

enhancement and arrived at a lower theoretical guideline range for purposes of the sentencing analysis under 18 U.S.C. § 3553(a). *See 2014 Sentencing Tr*. 82:16-23. As part of its analysis under 18 U.S.C. § 3553(a), using a guideline calculation without the two-level obstruction of justice enhancement, the Court calculated the guideline range to be 235 to 293 months. *Id*. Reducing the bottom of the guideline range by seventy months, (which is what the Court had done at the original sentencing hearing), the Court imposed a sentence on resentencing of 165 months on the child pornography counts. *Id*. This sentence, in the Court's view, gave Mr. Cameron the "benefit of his appellate victory." *Id*. 83:25-84:2.

C. **James Cameron's Second Appeal**

Mr. Cameron appealed his sentence to the Court of Appeals for the First Circuit and claimed the 165 month sentence was procedurally and substantively unreasonable. *United States v. Cameron*, 835 F.3d 46, 47 (1st Cir. 2016). Mr. Cameron did not challenge the five-level enhancement under § 2G2.2(b)(3)(B) on appeal. *Id.* at 51 ("Here, the district court correctly treated the Sentencing Guidelines as its starting point in calculating Cameron's sentence. Cameron does not contest the district court's calculation. . . .").

D. **Amendment 801 Effective November 1, 2016**

Effective November 1, 2016, the United States Sentencing Commission made a number of changes to U.S.S.G. § 2G2.2(b)(3). *See United States Sentencing Comm'n, Guidelines Manual 2016, Supp. to Appendix C* at 139-45 (*Am. 801 Supp.*). Two

7

changes are relevant to Mr. Cameron's case.[4] One was the imposition of a "knowing" requirement for distribution under § 2G2.2(b)(3)(F); another was the change to the definition of "distribution in exchange for any valuable consideration."

### 1. "Knowing" Distribution under § 2G2.2(b)(3)(F)

The Sentencing Commission amended U.S.S.G. § 2G2.2(b)(3)(F) to "clarify the mens rea needed to trigger § 2G2.2(b)(3)(F)." *United States v. Cates*, 897 F.3d 349, 358 (1st Cir. 2018). The amended version reads that a sentencing court may increase a defendant's offense level by two levels "[i]f the defendant knowingly engaged in [the] distribution" of child pornography. *Id.* (quoting U.S.S.G. § 2G2.2(b)(3)(F)). As the *Cates* Court wrote, the "stipulation that distribution must be 'knowing' was not part of the original version of the child pornography guidelines." *Id.*

### 2. Distribution In Exchange for Any Valuable Consideration

As the Magistrate Judge recognized, the Sentencing Commission also changed some of the language in Note 1 of the Application Notes to the Commentary to U.S.S.G. § 2G2.2. *Recommended Decision* at 6. The pre-amendment language provided in part: "'Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain' means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." *Id.* The post-amendment language states:

> "**The defendant distributed in exchange for any valuable consideration**" means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person

---

[4] Amendment 801 also expanded the tiers applicable to the distribution enhancement, but these changes are not at issue here.

8

for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material. . . .

U.S.S.G. § 2G2.2 cmt. n.1.

### 3. The Sentencing Commission's Explanation

In adopting Amendment 801, the Sentencing Commission explained that the amendment "addresses differences among the circuits involving application for the tiered distribution enhancements in § 2G2.2." *Am. 801 Supp.* at 144. The Commission wrote that "[t]he circuits have reached different conclusions regarding the mental state required for application of the 2-level enhancement for 'generic' distribution as compared to the 5-level enhancement for distribution not for pecuniary gain." *Id.* The Commission explained:

> The circuit conflicts involving these two enhancements have arisen frequently, although not exclusively, in cases involving the use of peer-to-peer file-sharing programs or networks.

*Id.* The Commission detailed the conflict by describing peer-to-peer file sharing programs and the different approaches of the circuit courts. *Id.* at 144-45. It adopted the approach of the circuits that required the defendant to "knowingly engage in distribution." *Id.* at 145.

The Commission went on to clarify the circumstances under which the five-level distribution enhancement should be applied. *Id.* The Commission noted a dispute between the Fourth and Fifth Circuits again regarding the use of file-sharing programs. *Id.* For the five-level enhancement to apply, the Fourth Circuit required that a defendant (1) "knowingly made child pornography in his possession available to others by some means"; and (2) did so "for the specific purpose of obtaining

9

something of valuable consideration, such as more pornography." *Id.* (quoting *United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013)). By contrast, the Fifth Circuit imposed the five-level enhancement "when the defendant knowingly uses file-sharing software." *Id.* (citing *United States v. Groce*, 784 F.3d 291, 294 (5th Cir. 2015)).

The Commission resolved this split by clarifying that "the 5-level enhancement applies 'if the defendant distributed in exchange for any valuable consideration.'" *Id.* In other words, the five-level enhancement applies when "the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material . . . ." *Id.*

## II. DISCUSSION

Mr. Cameron's argument is built on a faulty premise: namely, that if Amendment 801 had been in effect at the time of either of his two sentencing hearings, he would have received a two-level enhancement. He would not. He still would have been subject to a five-level enhancement under § 2G2.2(b)(3)(B).

### A. The March 11, 2011 Sentencing and the Five-Level Enhancement

The Court has addressed this issue multiple times. The Court first discussed the five-level enhancement in its March 11, 2011 sentencing order. *Cameron*, 2011 U.S. Dist. LEXIS 24878, at *20-22. In his sentencing memorandum, Mr. Cameron emphatically denied that he bartered images of child pornography with anyone. *Def.'s Mem.* at 32 ("[T]he trial evidence did NOT establish that Mr. Cameron engaged

10

in *quid pro quo* image exchanges") (emphasis in original). Mr. Cameron contended that the "'trading of images—terminology embraced by the government because of its pejorative connotation—occurs in virtually every child pornography case." *Id.* at 61. He then argued that there was "no direct evidence (beyond the government's interpretation of events) that Mr. Cameron purposefully engaged in *image-for-image* exchanges." *Id.* at 62 (emphasis in original).

The Court responded at the March 10, 2011 sentencing hearing and in its March 11, 2011 sentencing order. At the sentencing hearing, the Court stated:

> Now, there's a lot of evidence in this case. There's a tremendous amount of evidence, and some of that evidence is evidence of chats between a, quote, user, unquote, and other people, and the user I found and easily conclude here - - I found beyond a reasonable doubt and easily conclude here is more probably than not the defendant.
>
> So the trial evidence, for example, includes an extended discussion between the user and a person by the screen name of kinkybink, and they discuss that - - the fact that Yahoo! had closed out their accounts and they had switched to GoogleHello - - or they switched to Hello, presumably meaning GoogleHello, and the user says, referring to GoogleHello, quote, plus it's better for trading pics, unquote.
>
> And then kinkybink sends the user, which is the defendant, 13 pictures, three of which show prepubescent children engaged in sexual activity, and upon receipt of these picture, Mr. Cameron responds that the images were, all in caps, wild, and kinkybink asks for some pics, and the user then sends of series of images to kinkybink.
>
> But that's just an example. The trial record here is replete with conversations between the local user, which is the defendant, and with others, sometimes with attached images of child pornography and sometimes without the images. And it is clear beyond any doubt and certainly more likely than not that Mr. Cameron was trading images within the meaning of Section 2G2.2(b)(3)(B).

*2011 Sentencing Tr.* 26:9-27:9.

In its March 11, 2011 sentencing order, the Court rejected Mr. Cameron's arguments based on the trial evidence:

> The trial evidence includes an extended discussion between the "user" and a person with the screen name "kinkybink." *Gov't Ex.* GX 50E(5)(b). They discuss the fact that Yahoo! closed their accounts and they had switched to "hello", presumably referring to GoogleHello. Referring to GoogleHello, the "user" says, "plus its better for trading pics!" Kinkybink then sent "user" 13 pictures, three of which show prepubescent children engaged in sexual activity. Upon receipt, "user" responds that the images were "WILD." Kinkybink asks for some "pix". User then sends a series of images containing child pornography. This is not all. The trial record contains evidence of numerous chats between the local user, Mr. Cameron, and with others, sometimes with attached images of child pornography and sometimes without the images.
>
> The Court need go no further. The Court finds based on the evidence that "user" is Mr. Cameron and contrary to Mr. Cameron's emphasized position in this case, the trial evidence contains sufficient evidence to establish that he bartered images of child pornography for other images of child pornography.

*Cameron*, 2011 U.S. Dist. LEXIS 24878, at *21-22.

### B. The December 17, 2014 Sentencing and the Five-Level Enhancement

The issue arose again at Mr. Cameron's resentencing hearing. Before the resentencing hearing, Mr. Cameron reiterated his position that the Court should assess a two-level, not a five-level enhancement under § 2G2.2(b)(3). *Defense Mem. Addressing Unresolved Guideline Calculation Issues* at 8-10 (ECF No. 329). For the first time, Mr. Cameron admitted that he was the person who had sent and received images from both angiebii and kinkybink. *Id.* at 8. But he argued that the standard is "not the mere reciprocal sending of images" and the "enhancement requires more." *Id.* He maintained there was also "no evidence of bartering." *Id.* In his view, to fit

12

within the five-level enhancement of § 2G2.2(b)(3)(B), the Court had to find that Mr. Cameron sent the images "conditional upon the receipt of child pornography or some other thing of value." *Id.* at 9. In short, he contended that "the government has not shown that Cameron had the specific expectation that by sending an image to another, they would send an image to him." *Id.* at 10.

In its response, the Government detailed the online dealings Mr. Cameron was having with others interested in child pornography:

> It bears mention that peer-to-peer networks were not widely used to trade child pornography when Defendant committed his offense. That aside, as the Court is aware, peer-to-peer software allows a user to designate certain files for sharing over a network. Once the user has designated the filed, however, the sharing is purely passive and involves no personal interaction with fellow consumers.
>
> Here, in contrast, Defendant engaged in live-time chat with fellow traders, during which they actively sought and sent images and shared their reactions to them (i.e. "OMG I'm rubbing now").

*Gov't's Second Mem. in Aid of Re-Sentencing* at 4 (ECF No. 337).

On October 17, 2014 in its written sentencing order, the Court reiterated its earlier written conclusion that the five-level enhancement applied to Mr. Cameron. *Cameron*, 2014 U.S. Dist. LEXIS 148418, at *29-34. Specifically, the Court wrote that "there is convincing evidence that Mr. Cameron exchanged specific photos with "angiebii" and "kinkykink" and received specific photos in return." *Id.* at 34.

At the December 17, 2014 sentencing hearing, the Court addressed the same objection. *2014 Sentencing Tr.* 26:20-27:5. The Assistant United States Attorney stated:

> MS. MALONE: [W]hen we look at the entire scope of his conduct - - the trading and the searching and the moving to photo albums - - even if you

13

take the Yahoo - - the vacated counts out of that, what we're left with, from the government's perspective, is the worst of the conduct in which he was involved. It was those live-time chats, where he and another person were commenting on the images and describing what they were seeing, what they wanted to do, and what they had done, and it was - - it was as close to the real thing as one can get in an Internet environment.

THE COURT: It was - - it was verbal pornography.

*Id.* As noted earlier, Mr. Cameron did not challenge this guideline finding on appeal. *Cameron*, 835 F.3d at 47.

## III. CONCLUSION

The change in language in Amendment 801 does not change Mr. Cameron's sentence. Section 2G2.2(b)(3)(B) reads:

> If the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain, increase by **5** levels.

U.S.S.G. § 2G2.2(b)(3)(B). The relevant language from the Sentencing Commission's commentary reads:

> **"The defendant distributed in exchange for any valuable consideration"** means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the purpose of obtaining something of valuable consideration from that other person, such as other child pornography . . . .

U.S.S.G. § 2G2.2(b)(3)(B), *App. Note* 1. Based on the evidence in this record, the Court finds that if this language had been applicable to Mr. Cameron at his sentencing hearings, the Court would have applied the five-level enhancement under § 2G2.2(b)(3)(B), the total offense level would have been 38, and with a criminal history category of I, his sentencing range would still be 210 to 238 months and the 165 month sentence on the child pornography offenses would stand.

14

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record and has made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision. The Court concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and for the reasons set forth in this opinion, and determines that no further proceeding is necessary.

1. It is therefore <u>ORDERED</u> that the Recommended Decision of the Magistrate Judge is hereby <u>AFFIRMED</u>.

2. It is further <u>ORDERED</u> that the United States' motion for summary dismissal of the Petitioner's 28 U.S.C. § 2255 motion is granted and said 28 U.S.C. § 2255 motion (Docket # 364) be and hereby is <u>DISMISSED</u>.

3. It is further <u>ORDERED</u> that no certificate of appealability should issue in the event the Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2018